Filed 12/11/17

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| VIRGIL JENSEN et al., | |
| Plaintiffs and Respondents, | E065887 |
| v. | (Super.Ct.No. CIVDS1504522) |
| U-HAUL CO. OF CALIFORNIA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Keith D. Davis, Judge. Affirmed.

Alston & Bird, Todd B. Benoff and Jesus J. Torres for Defendant and Appellant.

Law Offices of Steven Zwick, Steven Zwick and James Alquist for Plaintiffs and Respondents.

## I. INTRODUCTION

In this tort action, plaintiffs and respondents Virgil Jensen and Glenda Jensen contend that they suffered damages caused by a negligently maintained rental truck, which blew a tire while Virgil Jensen was driving it. Defendant and appellant U-Haul Co. of California (UHCA) appeals from the trial court's denial of its motion to compel

1

arbitration. UHCA contends that plaintiffs are bound by the arbitration agreement in the rental contract, even though neither plaintiff is a party to that contract. We affirm the trial court's ruling.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs brought suit on April 13, 2015, alleging causes of action for negligence and (as to Glenda Jensen only) loss of consortium. UHCA subsequently filed a motion to compel arbitration and to stay further proceedings in the trial court. In relation to UHCA's motion, the parties submitted a stipulation agreeing to the following facts:

"1. On July 11, 2013, Plaintiff Virgil Jensen was an employee of CTS Global Products, USA, Inc. ('CTS').

"2. On July 11, 2013, Charles Scannell, Mr. Jensen's supervisor, rented a truck from UHCA.

"3. Plaintiff Virgil Jensen was hired as a warehouse worker for CTS.

"4. On July 11, 2013, Mr. Scannell instructed Plaintiff Virgil Jensen to use the UHCA truck to transport CTS's massage chairs and exercise machines to the Sacramento State Fair. This was allegedly the first time that Mr. Jensen ever drove a truck on behalf of CTS.

"5. On July 11, 2013, Plaintiff followed Mr. Scannell's instructions and transported CTS's massage chairs and exercise machines in the UHCA truck to the California State Fair. During the trip, Plaintiff was allegedly injured when the tire on the UHCA truck blew out ('the Incident').

2

"6. Plaintiff filed a worker's compensation claim against CTS regarding the Incident alleged in his Complaint arising out of his use of the UHCA truck.

"7. The parties agreed that Plaintiff's alleged injuries occurred during the course and scope of his employment with CTS—that at the time of the Incident alleged in the Complaint, Plaintiff Virgil Jensen was acting at the direction of CTS.

"8. At the time of the Incident, Plaintiff Virgil Jensen allegedly had no knowledge of an alleged Agreement to Arbitrate Claims under the UHCA rental agreement, and Mr. Jensen had never signed the UHCA rental agreement."

In support of its motion, UHCA also presented evidence that an arbitration agreement is incorporated into each of its rental contracts, including the one signed by Mr. Scannell. The arbitration agreement provides that "You and U-Haul agree that any and all Claims . . . between You and U-Haul relating in any way to your rental . . . from U-Haul shall be submitted to binding Arbitration . . . ." It defines the term "'You'" to include "You and Your respective . . . agents, employees . . . [and] all authorized or unauthorized users of the U-Haul equipment . . . ." The term "'Claim'" is defined "broadly" to include "any and all legal theories, including but not limited to, all statutory and tort claims, that may be asserted by You."

Additionally, UHCA presented evidence that Mr. Scannell is not only Mr. Jensen's supervisor, but also the owner, chief executive officer, chief financial officer, secretary, and sole director of CTS.

The trial court denied UHCA's motion.

## III. DISCUSSION

### A. Standard of Review.

"In general, '[t]here is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.'" (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.) In the absence of conflicting extrinsic evidence, "'[w]hether and to what extent [nonsignatories] can also enforce the arbitration clause is a question of law, which we review de novo.'" (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708.)

### B. Analysis.

There is no doubt that plaintiffs' claims fall within the extremely broad scope of the arbitration agreement at issue. It is undisputed that Virgil Jensen was a "user" of the UHCA equipment—we need not decide whether he was an "authorized" or "unauthorized" user, since the agreement purports to encompass both—and plaintiffs' claims arise from his use of that equipment. Nevertheless, whatever the breadth of the contractual language, plaintiffs can only be forced to arbitrate their claims if they are bound by the arbitration agreement entered into by Mr. Scannell and UHCA.

"Persons are not normally bound by an agreement entered into by a corporation in which they have an interest or are employees." (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513 (*Suh*).) More specifically, as a general rule, "[t]he right to

4

arbitration depends on a contract, and a party can be compelled to submit a dispute to arbitration only if the party has agreed in writing to do so." (*Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 598 (*Matthau*).) "Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245 (*Contra Costa*).)

Nevertheless, there are circumstances under which persons who have not signed an agreement to arbitrate are bound to do so. One treatise has stated that there are "six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.'" (*Suh, supra*, 181 Cal.App.4th at p. 1513 [quoting 2 Oehmke, Commercial Arbitration (3d ed. 2006 update) § 41.57 at pp. 41-195]; see 1 Oehmke, Commercial Arbitration (3d ed. Aug. 2017 update) § 8.1 [similar].) "The California cases binding nonsignatories to arbitrate their claims fall into two categories. In some cases, a nonsignatory was required to arbitrate a claim because a benefit was conferred on the nonsignatory as a result of the contract, making the nonsignatory a third party beneficiary of the arbitration agreement. In other cases, the nonsignatory was bound to arbitrate the dispute because a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." (*Contra Costa, supra*, 47 Cal.App.4th at p. 242.)

The parties have not cited to, nor have we discovered, any authority addressing precisely analogous circumstances, that is, an attempt to enforce an arbitration clause in an equipment rental agreement against the nonsignatory employee of the party that rented the equipment. UHCA, citing to general principles and cases that it contends are analogous, argues that plaintiffs are bound to arbitrate their claims, even though they are not signatories to the agreement between Mr. Scannell and UHCA, on any of three theories: third-party beneficiary, agency, or estoppel. We are not persuaded.

*1. Third-party Beneficiary.*

UHCA contends that Mr. Jensen is a third party beneficiary of the contract between UHCA and Mr. Scannell. "A third party beneficiary is someone who may enforce a contract because the contract is made expressly for his benefit." (*Matthau*, *supra*, 151 Cal.App.4th at p. 602.) "'"The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract."'" (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 967 (*Cargill*).) "'[W]here . . . the issue [of whether a third party is an intended beneficiary] can be answered by interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the circumstances and negotiations of the parties in making the contract, the issue becomes one of law that we resolve independently.'" (*Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 891.)

Mr. Jensen is not a third-party beneficiary of the contract between Mr. Scannell and UHCA. The rental agreement at issue contemplates the possibility that Mr. Scannell might authorize someone other than himself to use the truck. Nothing in the terms of the

6

agreement, however, demonstrates any express intent to benefit a third party—whether Mr. Jensen specifically, or Mr. Scannell's employees generally—on the part of either Mr. Scannell or UHCA. (See *Hayes Children Leasing Co. v. NCR Corp.* (1995) 37 Cal.App.4th 775, 790 [sublessee of equipment not a third party beneficiary of contract for lease of equipment, because final contract between lessee and lessor did not mention sublessee].)

In its briefing on appeal, UHCA points to the undisputed fact that "Mr. Scannell rented the U-Haul Truck so that Mr. Jensen could transport CTS's products . . . ." It is doubtful, however, that this circumstance describes a benefit to Mr. Jensen; he drove the truck not for his own benefit, but for the benefit of CTS. UHCA has not cited, and we have not discovered, any case in which an employee has been found to be the third party beneficiary of a contract between his or her employer and an equipment provider for the supply of the equipment that the employee uses on the job. Moreover, even if UHCA were correct that Mr. Jensen received a benefit, it is well established that the "mere fact that a contract results in benefits to a third party does not render that party a 'third party beneficiary.'" (*Matthau, supra*, 151 Cal.App.4th at p. 602.) Rather, the terms of the contract must demonstrate the express intent to confer the benefit. (*Cargill, supra*, 201 Cal.App.4th at p. 967.) As discussed above, the rental agreement between UHCA and Mr. Scannell does not do so.

We conclude that Mr. Jensen is not a third party beneficiary of the contract between Mr. Scannell and UHCA, and reject that theory as a basis for requiring plaintiffs to arbitrate their claims.

7

*2. Agency.*

It is undisputed that Mr. Jensen was acting in his capacity as an employee of CTS when he drove the truck rented by Mr. Scannell on July 11, 2013, and that he did so on instructions from Mr. Scannell. UHCA contends that these facts demonstrate an agency relationship that suffices to bind Mr. Jensen to the arbitration agreement entered into by UHCA and Mr. Scannell. We disagree.

There are cases in which an employee is held to be bound by an arbitration agreement entered into by his or her employer, even though the employee did not sign on to the agreement.[1] For example, in *Harris v. Superior Court* (1986) 188 Cal.App.3d 475 (*Harris*), a case relied on by UHCA, plaintiffs asserting claims of medical malpractice sought to compel a doctor to participate in binding arbitration pursuant to a provision in a contract between his employer, a medical group, and the patient's health plan. (*Id*. at p. 477.) The Court of Appeal sided with the plaintiffs, remarking that it found the employer-employee relationship "sufficient to bind [the doctor] to the arbitration agreement which named [the medical group]." (*Id.* at p. 478.)

In *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511 (*RN Solution*), the Court of Appeal cites *Harris* for the broad proposition that an "employee of [a] corporation that is party to [an] arbitration agreement is bound by [the]

---

[1] We acknowledge, but will not discuss in any detail Mr. Jensen's arguments based on the circumstance that Mr. Scannell did not expressly indicate, when signing the contract with UHCA, that he was acting in his capacity as a representative of CTS, rather than in his individual capacity. It suffices, for present purposes, to note that those arguments are unpersuasive.

8

agreement" (*RN Solution*, *supra*, at p. 1520), and this is essentially UHCA's position in its briefing in this appeal. We are not persuaded, however, that this phrasing accurately describes the circumstances in which it is appropriate to enforce an arbitration agreement between the corporation and a third party against a nonsignatory employee of the corporation. The general rule that "[p]ersons are not normally bound by an agreement entered into by a corporation in which they have an interest or are employees" would be vitiated by so broad an agency exception. (*Suh, supra*, 181 Cal.App.4th at p. 1513.) As noted in *Suh*, the mere fact that parties are employees of a corporation "does not mean they were bound" by an arbitration clause in an agreement between the corporation and a third party. (*Id.* at p. 1514.)

Moreover, neither *Harris* nor *RN Solution* in fact applies so broad a rule as some of their language, taken in isolation, arguably suggests. In *Harris*, the doctor at issue was not only an employee of the corporation that entered into the arbitration agreement, but also a third-party beneficiary of that agreement. (*Harris, supra*, 188 Cal.App.3d at p. 479.) Similarly, in *RN Solution*, the party opposing enforcement of the arbitration agreement in fact signed it in her capacity as the corporation's president and CEO, and had personally "benefited financially and professionally" from it, so she was not only an "agent-employee" of the corporation, but also a third-party beneficiary. (*RN Solution, supra*, 165 Cal.App.4th at p. 1520.)

In our view, therefore, the proper inquiry is not only whether there is any sort of preexisting agency relationship with one of the signatories to the arbitration agreement—whether employer-employee, or another form of agency—but also whether that

9

preexisting relationship is of such a nature that it supports a finding of "implied authority for [one of the signatories] to bind [the nonsignatory] by their arbitration agreement." (*Contra Costa, supra*, 47 Cal.App.4th at p. 243.) It is critical to ask who is seeking to bind whom, and on what basis; the question of whether a principal's acts bind an agent is fundamentally different from the question of whether an agent's acts bind a principal.

The employer's implied authority to bind the employee to an arbitration agreement is (at least arguably) discernible in the relationship between a doctor and a medical group in *Harris*; the primary purpose of the medical group is to provide medical services to the patients, and to provide patients to the doctor, so the doctor is reasonably bound to the contracts between the medical group and patients or their health plans. (See *Harris, supra*, 188 Cal.App.3d at p. 477; but see *Walker v. Collyer* (Mass.App.Ct. 2014) 9 N.E.3d 854, 856-857 [physician not compelled to arbitrate medical malpractice claim pursuant to arbitration agreement between representative of deceased patient and facility where physician practiced medicine and served as program medical director].) Such implied authority is also discernable when the employee who was not technically a party to the arbitration agreement in fact signed it in her capacity as president and CEO of a corporation and personally benefitted from the contract. (*RN Solution, supra*, 165 Cal.App.4th at p. 1520.) Every California case finding nonsignatories to be bound to arbitrate is based on facts that demonstrate, in one way or another, the signatory's implicit authority to act on behalf of the nonsignatory. (E.g., *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 702-709 [statutes granted state employers implied authority to contract for medical plan on employees' behalf]; *Doyle v. Giuliucci*

10

(1965) 62 Cal.2d 606, 609-610 [minor bound by parent's agreement to arbitrate medical malpractice claim with health care provider]; *Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222, 228 [sole general partner of limited partnership "logically a beneficiary of any agreement entered into on behalf of the partnership"]; *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1001, 1004 [involving nonsignatory "agent" husband investing community property funds in brokerage account opened under wife's signature].)

The facts of the present case are different. The undisputed facts demonstrate an agency relationship between Mr. Jensen and his employer, and that Mr. Jensen in fact performed work at the direction of Mr. Scannell. There is nothing in the present record, however, that requires the conclusion that Mr. Scannell had implicit authority (whether acting on behalf of CTS, or in his individual capacity) to bind Mr. Jensen to an arbitration agreement. Put another way: Nothing in evidence regarding Mr. Jensen's role as a "warehouse worker" for CTS takes the present case outside of the general rule that "[p]ersons are not normally bound by an agreement entered into by a corporation in which they have an interest or are employees." (*Suh, supra*, 181 Cal.App.4th at p. 1513.)

At oral argument, UHCA emphasized its position that no analysis of implied authority is necessary where the nonsignatory to the arbitration agreement is an agent of the signatory; that the agency relationship alone gives the signatory the authority to bind the nonsignatory. As discussed above, this position is fundamentally incompatible with the general rule that "[p]ersons are not normally bound by an agreement entered into by a corporation in which they have an interest or are employees." (*Suh, supra*, 181

11

Cal.App.4th at p. 1513.) Moreover, UHCA's position rests on partial and selective analysis of the authority it cited in support. For example, at oral argument, counsel for UHCA cited *RN Solution, supra,* 165 Cal.App.4th at p. 1511, as a case where an officer of a corporation was found to have the authority to bind a nonsignatory employee to an arbitration clause in a contract. In that case, however, the individual plaintiff who opposed enforcement of the arbitration clause in the contract was in fact a signatory to the contract at issue, in her role as president and CEO of the plaintiff corporation. (*Id.* at p. 1520.) The Court of Appeal also remarks that one of the defendants, a nonsignatory employee of the defendant corporation who joined his employer in attempting to compel arbitration, was "bound by the arbitration agreement and entitled to enforce it." (*Ibid.*) That nonsignatory employee defendant, however, was allegedly "a managing agent and vice-president of human resources" who "oversaw" the contract at issue for his employer, and allegedly used that position to coerce the individual plaintiff into a sexual relationship. (*Id.* at pp. 1513, 1520.) Mr. Jensen's involvement with the contract at issue here is, to say the least, distinguishable from that of both of these parties in *RN Solution.*

Similarly, at oral argument, counsel for UHCA highlighted the Court of Appeal's comment in *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64 (*NORCAL Mutual*) that if the respondent had been an employee of the signatory to the contract at issue, "there would appear to be little question that she would be bound by the arbitration agreement . . . ." (*Id.* at p. 77.) In that case, the respondent had been sued, along with her husband, in a medical malpractice action; her husband was a therapist, she was not, but she had allegedly taken part in the treatments that led to the malpractice action. (*Id.* at

12

pp. 66-67.) The insurance policy issued by NORCAL Mutual to the therapist husband expressly covered his employees and "'health care extenders' for whom he was legally responsible . . . ." (*Id.* at p. 77.) If the respondent had been his employee, therefore, she would have been a third party beneficiary of the contract, and bound to the arbitration clause on that basis. (See section II.B.1, *ante*.) Moreover, the respondent had demanded that NORCAL Mutual provide her coverage under the policy. (*NORCAL Mutual*, *supra*, at pp. 67, 77.) As such, she was estopped from refusing to arbitrate. (See section II.B.3, *post*.) *NORCAL Mutual* is not fairly read to stand for the proposition advanced by UHCA regarding implied authority of an employer to bind its employees to arbitration agreements.

For the above reasons, we find UHCA's arguments based on the agency relationship between Mr. Jensen and his employer unpersuasive.

*3. Estoppel.*

UHCA contends that the "trial court also erred when it held that Mr. Jensen is not equitably estopped from repudiating the Arbitration Agreement." We find no error.

A nonsignatory plaintiff may be estopped from refusing to arbitrate when he or she asserts claims that are "dependent upon, or inextricably intertwined with" the underlying contractual obligations of the agreement containing the arbitration clause. (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239.) "The focus is on the nature of the claims asserted . . . . That the claims are cast in tort rather than contract does not avoid the arbitration clause." (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 272.) Rather, "'*[t]he plaintiff's actual dependence on the*

*underlying contract in making out the claim against the nonsignatory . . . is . . . always the* sine qua non *of an appropriate situation for applying equitable estoppel.'"* (*Goldman v. KPMG*, *LLP* (2009) 173 Cal.App.4th 209, 229 (*Goldman*), quoting *In re Humana Inc. Managed Care Litigation* (11th Cir. 2002) 285 F.3d 971, 976.) "[E]ven if a plaintiff's claims 'touch matters' relating to the arbitration agreement, 'the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action.'" (*Goldman*, *supra*, at p. 230, quoting *Palmer Ventures LLC v. Deutsche Bank AG* (5th Cir. 2007) 254 Fed. Appx. 426, 431-432.) "The fundamental point" is that a party is "not entitled to make use of [a contract containing an arbitration clause] as long as it worked to [his or] her advantage, then attempt to avoid its application in defining the forum in which [his or] her dispute . . . should be resolved." (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 84.)

Our review of plaintiffs' complaint shows that plaintiffs do not rely or depend on the terms of the rental agreement between Mr. Scannell and UHCA in asserting their claims, and none of their allegations are in any way founded in or bound up with the terms or obligations of that agreement. The complaint mentions that the truck that allegedly injured Mr. Jensen was rented from UHCA, but the asserted claims of negligence and loss of consortium are "fully viable without reference to the terms" of the rental agreement. (*Goldman, supra*, 173 Cal.App.4th at p. 230.) "That being so, the basis for equitable estoppel—relying on an agreement for one purpose while disavowing the arbitration clause of the agreement—is completely absent." (*Ibid.*)

14

UHCA's arguments in support of the contrary conclusion conflate two separate and distinct issues: (1) whether a *signatory* plaintiff's claims sufficiently relate to or arise from a contract, so as to fall within the scope of the arbitration clause that was agreed to by the parties to that contract; and (2) whether a *nonsignatory* plaintiff's claims are so dependent on and inextricably intertwined with the underlying contractual obligations of the agreement containing the arbitration clause that equity requires those claims to be arbitrated.[2] We are persuaded that if Mr. Scannell had alleged injuries similar to those allegedly suffered by Mr. Jensen, and he asserted similar claims, he would be required to arbitrate the matter because of the dispute's "roots in the relationship between the parties which was created by the contract" and the broad language of the arbitration agreement at issue. (*Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003.) But a different analysis applies to plaintiffs' claims.[3]

---

[2] UHCA has requested that we take judicial notice of three trial court orders in unrelated cases, compelling the plaintiffs to arbitrate "tort cases related to the use of U-Haul rental vehicles or equipment." At least two of these cases, however, and possibly the third, involved plaintiffs who were parties to the rental contract containing the arbitration agreement. Even if properly the subject of a request for judicial notice, therefore, these trial court orders are irrelevant to our analysis, and the request is accordingly denied. (See *State of California ex rel. Metz v. Farmers Group, Inc.* (2007) 156 Cal.App.4th 1063, 1071, fn. 7.)

[3] Because we reject each of UHCA's asserted bases for holding plaintiffs to be bound by the arbitration clause, we need not, and do not, address the parties' arguments with respect to whether the rental agreement was procedurally or substantively unconscionable.

15

## IV.  DISPOSITION

The order appealed from is affirmed.  Plaintiffs and respondents Virgil Jensen and Glenda Jensen are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION.


<u>       CODRINGTON       </u>
                                 J.

We concur:


<u>       MCKINSTER       </u>
                 Acting P. J.

<u>       SLOUGH          </u>
                   J.

16