Filed 2/8/21  Geveran Investments v. Irell & Manella CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GEVERAN INVESTMENTS, LTD., | |
| Plaintiff and Respondent, | G057734 |
| v. | (Super. Ct. No. 30-2018-01007860) |
| IRELL & MANELLA, LLP, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, John C. Gastelum, Judge.  Reversed.  Request for judicial notice granted in part and denied in part.

Irell & Manella, Harry A. Mittleman, Iian D. Jablon, and Alaina Bird for Defendant and Appellant.

Aguilera Law Group, A. Eric Aguilera, Raymond E. Brown, and Jennifer S. Marvin for Plaintiff and Respondent.

Irell & Manella (Irell) appeals from the trial court's order denying its motion to compel arbitration of an attorney fee dispute with Geveran Investments, Ltd. (Geveran), a non-signatory to the fee agreement. Irell argues the court erred by concluding the doctrines of agency, estoppel, and sham pleadings did not require the dispute be arbitrated. Because we conclude agency principles require the matter be arbitrated, we need not address Irell's other contentions. We reverse the court's order denying Irell's motion to compel arbitration.

FACTS

A. *Background*

The "Seatankers group" (Seatankers) includes Frontline Management Ltd. (Frontline), Wibbert Investment Company (Wibbert), and Geveran. Frontline is a management company organized under Bermuda law. Wibbert is an investment company organized under Republic of Liberia law. Geveran is an investment company organized under Cyprus law. Frontline manages Geveran and Wibbert. John Fredriksen owns and controls Frontline, Wibbert, and Geveran.

B. *Execution of Subscription Agreement*

Geveran hired Fredrik Halvorsen of Frontline to be Geveran's investment advisor. In April 2011, Halvorsen met with representatives of Lighting Science Group, Inc. (LSG) and J.P. Morgan regarding Geveran purchasing stock from LSG. Halvorsen performed due diligence for the purchase.

Halvorsen discussed Geveran's investment in LSG with Fredriksen before, and after, Geveran's investment. On May 10, 2011, Geveran purchased 6.25 million shares of stock from LSG for $25 million. Halvorsen executed the Subscription Agreement as the designated director of Geveran. The Subscription Agreement does not mention Frontline.

2

*C.  Fee Agreements*

The following year, Geveran wanted to rescind the stock purchase based on fraud.  Frontline retained Irell.  Irell sent a retainer agreement to Halvorsen, care of Frontline, "to represent Frontline . . . in connection with claims against J.P. Morgan arising from its investment in [LSG]."  Irell attached its "Standard Terms of Retention," which defined the client and included an arbitration provision.  On April 11, 2012, Halvorsen, on behalf of Frontline, executed the fee agreement with Irell (Fee Agreement).

Months later, Wibbert Investment Company (Wibbert) executed a fee agreement with Irell (Wibbert Fee Agreement) concerning its claims against New Silk Route PE Asia Fund, L.P. (New Silk Route).  Kostas Pallaris and Irene Theocharous, Seatankers' Chief Administrative Officer and Geveran Director, signed the fee agreement on behalf of Wibbert.

The Fee Agreement, and the Wibbert Fee Agreement, defined "client" and included a dispute resolution provision.  Section 13 stated the following:  "The Firm's client for the purpose of its representation is only the person or entity identified as the Client in the engagement agreement accompanying these Standard Terms of Retention. Unless expressly agreed in a signed writing, the Firm is not undertaking the representation of any related or affiliated person or entity, nor any parent, brother-sister, subsidiary, or affiliated corporation or entity, nor any of their or the Client's officers, directors, agents, partners, or employees . . . ."

Section 26 stated, "The firm and the Client agree that any dispute between them regarding any matter related to or arising out of the Firm's engagement by the Client, or any party's performance of the agreement governing the Firm's services, including but not limited to the quality of the services that the Firm renders, shall be resolved by confidential arbitration in Los Angeles, California. . . . All disputes shall be resolved in accordance with the substantive law of the State of California . . . ."

Irell filed a lawsuit on Wibbert's behalf in New York state court related to Wibbert's $37.5 million investment in New Silk Route. Irell won two preliminary injunction orders on Wibbert's behalf. Wibbert subsequently elected to retain new counsel.

## D. Power of Attorney

Halvorsen e-mailed Dimitris Hannas, a Geveran Director, asking him to execute a special power of attorney so Irell could inspect LSG's books and records. Hannas executed the document and returned it to Halvorsen. Irell demanded LSG make its books, records, and documents available for inspection and copying. Hannas executed a verification stating the demand, which "my counsel" Irell prepared, was true and correct.

## E. Geveran v. LSG et al.

In a Florida state court, Irell, and local counsel, filed a complaint on Geveran's behalf against LSG, J.P. Morgan and others seeking to rescind the stock purchase. The complaint alleged three causes of action. (*Geveran Investment Limited v. Lighting Science Group Corporation et al.* (Fla. 17th Jud. Circ., case No. 12-17738, June 22, 2012).) Halvorsen verified Geveran's discovery responses as its "authorized representative."

Theocharous advised Irell "to exclude Frontline Management from the invoice" and to instead issue its invoices to Geveran. Geveran paid Irell's legal fees.

The Florida trial court granted partial summary judgment on one cause of action for Geveran, entered a $36.7 million judgment, and dismissed without prejudice the remaining two causes of action. Geveran filed a motion for attorney fees supported by the Fee Agreement. The Florida trial court granted Geveran's motion. Geveran hired new counsel to represent it on appeal, and Irell withdrew as counsel of record. The Florida Fifth District Court of Appeal reversed. (*J.P. Morgan Securities, LLC, et al. v. Geveran Investments Limited, et al.* (2017) 224 So. 3d 316.)

*F. Attorney Fees Dispute*

Irell claimed Geveran and Wibbert owed it over $3 million in additional attorney fees and costs. Geveran, however, believed Irell overbilled it. Paul Marchand, Seatankers' General Counsel, sent a letter to Irell on Frontline letterhead identifying the Client as Frontline, Geveran, and Wibbert and demanding it refund "excessive fees and costs."

In November 2016, Geveran and Wibbert filed a petition to arbitrate a fee dispute with the Orange County Bar Association (OCBA). In the petition, Geveran stated, "Geveran signed an engagement letter retaining Irell in connection with its claims arising from an investment in a company called [LSG]. The . . . engagement letter and accompanying terms of retention is attached as Exhibit B." (Bold omitted.) The petition included similar language concerning Wibbert and detailed its litigation with New Silk Route. The box was checked next to the following language: "YES, Petitioner signed a written fee agreement (retainer agreement, engagement agreement)." Geveran attached a copy of the Fee Agreement. Irell filed a reply seeking to recover the unpaid $3.4 million in attorney fees and costs. Sixteen months later, Geveran and Wibbert dismissed their OCBA Petition.

Four months later, Geveran and Wibbert filed their complaint against Irell alleging 10 causes of action. As to Geveran, the complaint alleged claims for breach of fiduciary duty, unfair business practices, fraud, deceit-fraudulent concealment, money had and received, professional negligence, unjust enrichment, and accounting. The complaint stated Irell billed it nearly $17 million and Irell was not entitled to attorney fees because the Florida Fifth District Court of Appeal reversed. The complaint also stated Geveran "never received a retainer agreement from Irell" and "never signed a retainer agreement with Irell." (All caps. omitted.)

Irell served Geveran and Wibbert with a demand for arbitration. Geveran and Wibbert rejected Irell's demand to arbitrate.

5

Irell filed a motion to compel Geveran and Wibbert to arbitrate pursuant to the Fee Agreement and the Wibbert Fee Agreement. In support of the motion, Irell offered declarations from Irell attorneys A. Matthew Ashley (Ashley's 2018 Declaration), Michael G. Ermer, and Alaina A. Bird. Irell also offered numerous exhibits, including OCBA documents, Halvorsen's and Hannas's deposition testimony, and Geveran's interrogatory responses.

Geveran, and Wibbert, filed opposition to Irell's motion; Geveran submitted no evidence in support of its opposition. Geveran filed objections to Irell's evidence, including the OCBA documents.

Irell filed a reply. Irell also filed a request for judicial notice of various documents, including the OCBA documents. Geveran filed an objection to Irell's request for judicial notice.

The trial court held a hearing. After hearing oral argument, the court granted Irell's motion as to Wibbert and took its motion as to Geveran under submission. The following month, the court denied Irell's motion to compel Geveran to arbitrate, concluding principles of agency, estoppel, and sham pleading did not require arbitration. The court also denied Irell's request for judicial notice because it was untimely, and it was "mostly unnecessary" to decide the issue.

DISCUSSION

*I. Judicial Notice*

Irell requests we take judicial notice of the following documents: the June 22, 2012, complaint in *Geveran v. LSG* in Florida; the November 28, 2015, final judgment in *Geveran v. LSG* in Florida; the October 30, 2015, amended order for attorney fees in *Geveran v. LSG* in Florida; Ashley's declaration dated November 24, 2014 (Ashley's 2014 Declaration), in support of Geveran's motion for attorney fees in *Geveran v. LSG* in Florida; Geveran and Wibbert's November 4, 2016, OCBA Petition; and Irell's January 13, 2017, reply to the OCBA Petition.

6

Irell included all of these documents, except Ashley's 2014 declaration, as exhibits to its motion to compel arbitration, and they are included in Irell's Appellant's Appendix. Because all the records except Ashley's 2014 Declaration were before the trial court and are included in the record on appeal, we deny Irell's request for judicial notice as unnecessary. (*Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 631-632, fn. 11 [judicial notice unnecessary where documents part of trial court and appellate record].) As to Ashley's 2014 Declaration, we take judicial notice of the fact it was filed but not judicial notice of the truth of facts contained in the declaration. (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 483; Evid. Code, § 452, subd. (d).)

## II. Evidentiary Objections

Relying on *People v. Abel* (2012) 53 Cal.4th 891, 924 (*Abel*), Geveran argues the trial court erred by failing to rule on its evidentiary objections and it may raise the issue on appeal. What the *Abel* court stated, however, was "if the court overrules the objection, the objecting party may argue on appeal that the evidence should have been excluded for the reason asserted at trial[.]" (*Id*. at p. 924.) Geveran objected to admission of Ashley's 2018 Declaration, Halvorsen's and Hannas's deposition testimony, and Geveran's interrogatory responses, but the trial court declined to rule on any of the objections. After the court issued its ruling, in Geveran's favor, Geveran did not request the court rule on its objections. Objections to evidence in support of a motion to compel arbitration that the trial court does not rule on are waived on appeal. (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1319.) Thus, we decline Geveran's invitation to rule on its evidentiary objections in the first instance.

## III. Motion to Compel Arbitration

Irell concedes Geveran was a non-signatory to the Fee Agreement but argues it should be compelled to arbitrate based on the theories of agency, estoppel and

7

sham pleading. Agency principles required arbitration, and thus we limit our discussion accordingly.

*A. Arbitration Principles*

Generally, one must be a party to an arbitration agreement to be bound by it or to invoke it. (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 300 (*Jensen*).) However, there are exceptions to this general rule that allow non-signatories to be compelled to arbitrate. (*Id.* at pp. 300-301.) One of the exceptions is agency. (*Id.* at pp. 300-301.)

"'In general, "[t]here is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed."' [Citation.] In the absence of conflicting extrinsic evidence, "'[w]hether and to what extent [non-signatories] can also enforce the arbitration clause is a question of law, which we review de novo."' [Citation.]" (*Jensen, supra,* 18 Cal.App.5th at p. 300.) The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).)

Relying on *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549 (*van't Rood*), Geveran argues we review the trial court's ruling on agency for substantial evidence. It cites to the *van't Rood* court's statement, "Agency is generally a question of fact." (*Id.* at p. 562.) But the court continued, "'When the essential facts are not in conflict and the evidence is susceptible to a single inference, the agency determination is a matter of law for the court. [Citation.]' [Citations.]" (*Ibid.*)

Here, Irell offered evidence, but Geveran did not. The essential facts are not in conflict, and the evidence is susceptible to a single inference. Thus, we independently decide whether Frontline was Geveran's agent.

## B. Agency Principles

An agency may be actual or ostensible. (Civ. Code, § 2298.) "An agency is actual when the agent is really employed by the principal." (Civ. Code, § 2299.) Actual agency typically arises by express agreement, but it may be implied from the parties' conduct. (*van't Rood, supra,* 113 Cal.App.4th at p. 571.) "An agency is *ostensible* when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300.)

"'"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." [Citation.] "The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control." [Citation.]' [Citations.] Thus, the 'formation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship . . . .' [Citations.]" (*van't Rood, supra,* 113 Cal.App.4th at p. 571.)

"[T]he proper inquiry is not only whether there is any sort of preexisting agency relationship with one of the signatories to the arbitration agreement . . . but also whether that preexisting relationship is of such a nature that it supports a finding of 'implied authority for [one of the signatories] to bind [the non-signatory] by their arbitration agreement.' [Citation.] It is critical to ask who is seeking to bind whom, and on what basis; the question of whether a principal's acts bind an agent is fundamentally different from the question of whether an agent's acts bind a principal." (*Jensen, supra,* 18 Cal.App.5th at p. 303.)

9

*C.  Analysis*

Here, Irell submitted evidence establishing Geveran indicated Frontline was to act for it, and Frontline acted on Geveran's behalf and subject to its control.  The evidence demonstrated Frontline, Geveran, and Wibbert were commonly owned and closely affiliated entities that were part of Seatankers.  In Ashley's 2018 declaration, he stated, "Frontline managed the day-to-day activities of Geveran and routinely took actions on its behalf, both directly and also through another affiliated and commonly-owned entity called Frontline Corporate Services Limited."  This was evidence Geveran consented to Frontline acting on its behalf, and Frontline consented to act for Geveran.

In his deposition testimony, Halvorsen stated Frontline Corporate Services employed him, and in its interrogatory responses, Geveran admitted it "engaged . . . Halvorsen to represent [Geveran's] interest in the purchase of LSG stock from LSG." Additionally, in its interrogatory responses Geveran stated Halvorsen had "a managerial interest" in Geveran, was "an authorized representative of" Geveran, and "at all relevant times, was personally responsible in overseeing [Geveran's] investment in LSG." Halvorsen signed the Subscription Agreement on Geveran's behalf and later signed the Fee Agreement on Frontline's behalf.  Indeed, in his deposition, Hannas stated Halvorsen had the authority to sign any agreements on Geveran's behalf.  This was evidence though Halvorsen's conduct of a bilateral agreement between Geveran and Frontline created an ostensible agency relationship.

The Fee Agreement that Halvorsen signed on behalf of Frontline provided, "We are pleased that you have asked [Irell] to represent Frontline . . . (the 'Client') in connection with claims against J.P. Morgan arising from its investment in [LSG]."  The "its" in "its investment" could only refer to Geveran because Geveran, not Frontline, had invested in LSG.  Geveran, not Frontline, was the only entity that had "claims against J.P. Morgan arising from its investment."  Thus, the Fee Agreement only makes sense if it bound Geveran, which refutes Geveran's claim Irell's representation of it was based only

10

on an attorney-client relationship. The only plaintiff in the Florida litigation was Geveran. Accordingly, Irell represented Geveran in that action.

When considered in its entirety, this evidence establishes Geveran, intentionally or through want of ordinary care, caused Irell to believe Frontline was Geveran's agent. Frontline and Geveran gave the impression they worked in conjunction on the Subscription Agreement and the Florida litigation, and Frontline had the authority to engage Irell through the Fee Agreement to represent Geveran. This was evidence of a preexisting relationship of such a nature that it supported a finding of implied authority for Frontline to bind Geveran by the arbitration agreement. Geveran submitted no evidence to rebut this conclusion. Therefore, we conclude, an ostensible agency relationship was created. To the extent Geveran asserts the equal dignities rule, Civil Code section 2309, applies in the ostensible agency context to require a writing, it cites to no authority, and we found none, to support that proposition.

## DISPOSITION

The order is reversed. Appellant is awarded its costs on appeal.

O'LEARY, P. J.

WE CONCUR:

ARONSON, J.

FYBEL, J.

11