Filed 5/24/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PILLAR PROJECT AG,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PAYWARD VENTURES, INC.,<br><br>        Defendant and Appellant. | A160731<br><br>(San Francisco County<br>Super. Ct. No. CGC-20-582705) |

Plaintiff Pillar Project AG (Plaintiff) hired a third party to exchange Plaintiff's cryptocurrency on an online exchange platform owned by Defendant Payward Ventures, Inc. (Defendant).  Plaintiff had funds stolen from the third party's account with Defendant, and sued Defendant.  Defendant moved to compel arbitration pursuant to an arbitration provision in its terms of service, which the third party had agreed to when it created the account on Defendant's platform some years earlier.  The trial court denied the motion, finding Plaintiff was not bound by the arbitration agreement between Defendant and the third party.  We affirm.

BACKGROUND

Defendant is an online "cryptocurrency exchange" platform that allows users to exchange conventional currency (e.g., U.S. Dollars or Euros) for digital currency (e.g., Bitcoin).  In March 2018, Plaintiff hired Epiphyte (UK) Limited (Epiphyte) to convert Plaintiff's cryptocurrency into conventional currency.  Epiphyte informed Plaintiff that it used Defendant's exchange to

1

convert its clients' cryptocurrencies. In April 2018, Plaintiff transferred its cryptocurrency into Epiphyte's account on Defendant's platform. After Epiphyte converted Plaintiff's currency but before all of the exchanged funds had been transferred to Plaintiff's bank account, approximately 4 million Euros belonging to Plaintiff were stolen from Epiphyte's account.

Plaintiff sued Defendant, alleging Defendant knew or should have known that Epiphyte was using its account with Defendant on behalf of Plaintiff, Defendant failed to use standard security measures on its exchange which would have prevented the theft of Plaintiff's funds, and Defendant falsely advertised that it provided the best security in the business. The complaint asserts claims for negligence and false advertising (Bus. & Prof. Code, § 17500 et seq.).

Defendant moved to compel arbitration. Defendant claimed that Epiphyte agreed to Defendant's "Terms of Service" when it created an account in August 2016—as all users were required to do before accessing Defendant's services—and that those Terms of Service included an arbitration agreement.[1] Defendant argued Plaintiff was bound by the arbitration agreement between Defendant and Epiphyte. In opposition, Plaintiff argued, as relevant here, that any arbitration agreement between

_____

[1] The arbitration agreement provided, in relevant part: "You and [Defendant] agree to arbitrate any dispute arising from these Terms or your use of the Services, except for disputes in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents. . . . You and [Defendant] further agree: (a) to attempt informal resolution prior to any demand for arbitration; (b) that any arbitration will occur in San Francisco, California; (c) that arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS; and (d) that the state or federal courts in San Francisco, California have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration. . . ."

Defendant and Epiphyte was not binding on Plaintiff, a nonsignatory to the agreement. The trial court denied Defendant's motion.

DISCUSSION

I.    *Legal Background*

" 'Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it.' [Citations.] 'There are exceptions to the general rule that a nonsignatory to an agreement cannot be compelled to arbitrate and cannot invoke an agreement to arbitrate, without being a party to the arbitration agreement.' " (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1236–1237 (*JSM Tuscany*).) " ' "As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.' " ' " (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 859 (*Cohen*).)

" ' "Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review." ' " (*Cohen, supra,* 31 Cal.App.5th at p. 859.)

II.    *Analysis*

Defendant argues Plaintiff is bound by the arbitration agreement between Defendant and Epiphyte under principles of agency, as a third party beneficiary of the Terms of Service, and pursuant to equitable estoppel. We disagree.[2]

---

[2] Because of this conclusion, we need not decide whether Defendant proved the existence of an arbitration agreement between itself and Epiphyte or whether Defendant waived any right to compel arbitration.

A.    *Agency*

"Not every agency relationship . . . will bind a nonsignatory to an arbitration agreement.  [Citation]  'Every California case finding nonsignatories to be bound to arbitrate [on an agency theory] is based on facts that demonstrate, in one way or another, the signatory's implicit authority to act on behalf of the nonsignatory.'  [Citations.]  Courts also have stated that the agency relationship between the nonsignatory and the signatory must make it ' "equitable to compel the nonsignatory" ' to arbitrate.  [Citations.] [¶] . . . Courts look to traditional principles of contract and agency law to determine whether a nonsignatory is bound by an arbitration agreement signed by its principal or agent."  (*Cohen, supra,* 31 Cal.App.5th at pp. 859–860.)

As an initial matter, the only evidence as to the nature of the relationship between Plaintiff and Epiphyte is that Plaintiff contracted with Epiphyte "to facilitate the conversion of [Plaintiff's] cryptocurrencies into conventional currencies and to transfer those conventional currencies to [Plaintiff's] bank account."[3]  This is not evidence that Epiphyte had the authority to enter into arbitration agreements (or other contracts) on Plaintiff's behalf; indeed, Plaintiff submitted evidence that Epiphyte did not have such authority.  (See *UFCW & Employers Benefit Trust v. Sutter Health* (2015) 241 Cal.App.4th 909, 932 (*UFCW*) ["the question of agency in plan administration is distinct from whether an entity serves as an agent in contract negotiations"].)

In any event, there is no evidence Epiphyte was acting as Plaintiff's agent in 2016, when it agreed to the Terms of Service nearly two years before

---

[3] The contract between Epiphyte and Plaintiff is not part of the record.

Plaintiff hired it. Defendant provides no authority establishing that an agency relationship automatically binds the principal to the agent's prior acts. Defendant points to a provision in the Terms of Service stating, "By clicking the 'create account' button *or by accessing or using the services*, you agree to be legally bound by these Terms of Service . . . ." (Capitalization altered, italics added.) Again, Defendant does not explain how Epiphyte's agreement to this term before the formation of any agency relationship with Plaintiff can bind Plaintiff.

Finally, Defendant argues that Plaintiff's acceptance of 1 million Euros from Defendant's exchange constituted a ratification of Epiphyte's agreement to the Terms of Service. " 'The fundamental test of ratification by conduct is whether the releasor, *with full knowledge of the material facts entitling him to rescind*, has engaged in some unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to a ratification.' " (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1090, italics added; see also *UFCW, supra,* 241 Cal.App.4th at p. 933 ["[a] principal may ratify an agency *with full knowledge of all the facts*" (italics added)].) Where, as here, "[t]here is no evidence [the principal] knew the arbitration agreements existed, that [the agent] signed them, or that [the principal] had a right to rescind them," no ratification has occurred. (*Valentine,* at p. 1090.)[4]

---

[4] Defendant points to the proposition that " '[A] principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging.' " (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 81 (*NORCAL*).) This proposition does not change the underlying requirement that the principal's full knowledge of the material facts is required before any ratification takes place.

Accordingly, Plaintiff is not bound by the Terms of Service by agency principles.

B.    *Third Party Beneficiary*

" 'A third party beneficiary is someone who may enforce a contract because the contract is made expressly for his benefit.' [Citation.] ' " 'The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract.' " ' " (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 301 (*Jensen*).)  "[T]he 'mere fact that a contract results in benefits to a third party does not render that party a "third party beneficiary." ' " (*Id.* at p. 302.)

We derive no intent to benefit Plaintiff or similar parties from the Terms of Service.  Indeed, Defendant does not so argue.  To the extent Defendant's argument is that Plaintiff should be bound because its claims are dependent on the Terms of Service, the issue is properly analyzed under principles of equitable estoppel.

C.    *Equitable Estoppel*

"The application of equitable estoppel principles to arbitrability questions arises in a variety of circumstances." (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 268 (*Boucher*).)  One such circumstance is that "[a] nonsignatory plaintiff may be estopped from refusing to arbitrate when he or she asserts claims that are 'dependent upon, or inextricably intertwined with' the underlying contractual obligations of the agreement containing the arbitration clause." (*Jensen, supra,* 18 Cal.App.5th at p. 306.)  Another is that " '[a] nonsignatory is estopped from refusing to comply with

6

an arbitration clause "when it receives a 'direct benefit' from a contract containing an arbitration clause." ' " (*Boucher,* at p. 269.)[5]

### 1. *Inextricably Intertwined Claims*

Defendant argues Plaintiff's claims are inextricably intertwined with the Terms of Service.

"Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable." (*JSM Tuscany, supra,* 193 Cal.App.4th at p. 1238.) "By relying on contract terms . . . , even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement. [Citation.] The focus is on the nature of the claims asserted by the plaintiff . . . . [Citations.] That the claims are cast in tort rather than contract does not avoid the arbitration clause." (*Boucher, supra,* 127 Cal.App.4th at p. 272.) " ' "[T]he plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory . . . is . . . always the sine qua non of an appropriate situation for applying equitable estoppel." ' [Citation.] '[E]ven if a plaintiff's claims "touch matters" relating to the arbitration agreement, "the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action." ' " (*Jensen, supra,* 18 Cal.App.5th at p. 306, italics omitted.)

Plaintiff's complaint asserts claims for negligence and false advertising. The claims do not expressly rely on or refer to the Terms of Service or any of its provisions. (Cf. *JSM Tuscany, supra,* 193 Cal.App.4th at p. 1242 [claims for breach of obligations imposed by contracts are "based upon the obligations

---

[5] The standards may apply differently when a nonsignatory seeks to enforce an arbitration agreement against a signatory. (See *Boucher, supra,* 127 Cal.App.4th at p. 269; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 991 ["It is one thing to permit a nonsignatory to relinquish his right to a jury trial, but quite another to compel him to do so."].)

created by the [contracts] and therefore subject to the arbitration clauses therein"]; *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 787 [employee's Labor Code violation claims "are intimately founded in and intertwined with his employment relationship with [a third party temporary staffing agency], which is governed by the employment agreement compelling arbitration"].) Defendant asserts that Plaintiff's claims are dependent on the contract between Epiphyte and Defendant, suggesting, for example, any duty Defendant owed Plaintiff could only have been as the result of this contract. Plaintiff disavows any such reliance, and Defendant provides no evidence or authority establishing that Plaintiff's claims cannot survive absent reliance on the Terms of Service.

Defendant has not shown Plaintiff's claims are inextricably intertwined with the Terms of Service.

### 2. *Direct Benefit*

Defendant also argues Plaintiff is bound by the arbitration clause because it received a *direct* benefit from Epiphyte's agreement with Defendant: the use of Defendant's cryptocurrency exchange and the receipt of some of the exchanged funds. Defendant relies on three cases to support this contention, which we reject.

In *NORCAL,* a psychiatrist and his wife were sued for medical malpractice. (*NORCAL, supra,* 84 Cal.App.4th at p. 66.) Both tendered the complaint to the psychiatrist's malpractice insurer, and the insurer agreed to provide a defense for the wife even though she was not covered by the policy. (*Id.* at pp. 67–68.) In a subsequent dispute between the wife and the insurer, the insurer filed a petition to compel arbitration pursuant to the psychiatrist's insurance policy. (*Id.* at p. 70.) The Court of Appeal held the wife was bound to the arbitration agreement in her husband's policy: "having

8

sought and accepted the benefit of the insurance policy in handling the underlying malpractice suit, [the wife] was required to abide by the policy's requirement of arbitration of disputes. [¶] . . . To allow [her] to rely upon the insurance policy to obtain representation but disavow the applicability of the arbitration provision to her would be to allow her to pick and choose the portions of the policy she wished to accept." (*Id.* at p. 82.)

In *Nicosia v. Amazon.com, Inc.* (E.D.N.Y. 2019) 384 F.Supp.3d 254 (*Nicosia*), affd. (2d Cir. 2020) 815 Fed.Appx. 612, the plaintiff's wife created an Amazon account and in doing so agreed to terms and conditions, including an arbitration agreement. (*Id.* at pp. 258–259, 270.) The plaintiff subsequently made purchases using his wife's account and sued Amazon over the purchases. (*Id.* at p. 261.) The court found the plaintiff estopped from avoiding arbitration because the use of his wife's account "allowed him to step into the shoes of his wife and enjoy the same contractual rights she enjoyed, *viz.*, the right to place an order on Amazon.com. Because plaintiff knowingly accepted the benefit of [his wife's] contractual relationship with Amazon, he must also be held to the arbitration clause that governs that relationship." (*Id.* at p. 275.)[6]

In *Hofer v. Emley* (N.D. Cal., Sept. 20, 2019, No. 19-CV-02205-JSC) 2019 U.S.Dist. LEXIS 161377 (*Hofer*), one of two brothers rented a car from an online car rental platform for a trip they were taking together. (*Id.* at *2-*3.) The rented car was erroneously identified as stolen, the brothers were arrested, and they subsequently sued the car rental company for negligence. (*Id.* at *6, *8.) The company moved to compel arbitration based on a

---

[6] The Second Circuit affirmed this order on different grounds, neither adopting nor rejecting the district court's analysis. (*Nicosia v. Amazon.com, Inc.* (2d Cir. 2020) 815 Fed.Appx. 612, 613.)

9

provision in the terms of service that the renting plaintiff agreed to when he first created his user account with the company well over a year before the rental at issue, and agreed to again approximately six months before the rental. (*Id.* at *13, fn.4.) The court held the nonsignatory plaintiff was estopped from avoiding the arbitration agreement because he was "at the very least aware that his brother rented the car from [the company]," and therefore "knowingly received a direct benefit as a result of the Agreement— the ability to travel as a passenger in a rental car . . . ." (*Id.* at *20-*21.)

These cases differ from the case before us. In each, the plaintiff sought and received a benefit that flowed directly from the agreement containing the arbitration clause. Unlike these cases, here there are two distinct contracts: the contract between Defendant and Epiphyte, and the contract between Epiphyte and Plaintiff. Plaintiff certainly received a direct benefit from its contract with Epiphyte. But because of the intervening contract with Epiphyte, any benefits Plaintiff received from the earlier agreement between Defendant and Epiphyte are more remote.[7]

We are unwilling to extend the reasoning of *NORCAL* and the two Federal District Court cases[8] to equitably estop a plaintiff who has received only indirect or remote benefits from a contract containing an arbitration

---

[7] It is also noteworthy that in the three cases relied on by Defendant, the plaintiff had a close, personal relationship with the signatory party, as a spouse or a sibling. (See *Hofer, supra,* 2019 U.S.Dist. LEXIS 161377, at *19, fn. 5 ["the Court notes that the relationship between [the signatory plaintiff] and [the nonsignatory plaintiff] further supports application of the doctrine of equitable estoppel in this case"].) However, the relationship between Plaintiff and Epiphyte is a commercial relationship between two independent, legally distinct business entities.

[8] We assume, without deciding, that the two Federal District Court cases were decided correctly on their facts.

clause. This unwillingness rests, in part, on the constitutional nature of the right to a jury trial. (Cal. Const., art. I, § 16 ["Trial by jury is an inviolate right and shall be secured to all . . . . In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute."].) In other contexts, courts have established rules of construction against waiver of this important right. (*Rodriguez v. Superior Court* (2009) 176 Cal.App.4th 1461, 1467 (*Rodriguez*) [" '[T]he right to trial by jury is considered so fundamental that ambiguity in [a] statute permitting such waivers must be "resolved in favor of according to a litigant a jury trial." ' "]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 804 ["Where it is doubtful whether a party has waived his or her constitutionally-protected right to a jury trial, the question should be resolved in favor of preserving that right."].)

To be sure, "California has a strong public policy . . . favoring arbitration over a jury trial or other litigation, in that arbitration is a speedy and relatively inexpensive means of resolving disputes and eases court congestion." (*Rodriguez, supra,* 176 Cal.App.4th at p. 1467.) However, " '[e]ven the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement.' " (*Jensen, supra,* 18 Cal.App.5th at p. 300.)

Finally, our decision reflects a concern with the practical implications of a ruling binding Plaintiff to the arbitration agreement between Defendant and Epiphyte: such a ruling could lead to enforcement of an arbitration agreement by a defendant at the end of a much longer chain of contracts. For example, to vary our facts slightly, if Defendant had contracted with a company to enhance the security of its online accounts, and Epiphyte had told Plaintiff about this company's role, could the security company compel

11

Plaintiff to arbitrate based on an arbitration agreement between itself and Defendant? Given the significance of the right to a jury trial and the inapplicability of the policy in favor of arbitration in this context, we decline to open the door to such results.

Accordingly, we conclude Plaintiff, a nonsignatory, should not be bound by the arbitration agreement between Epiphyte and Defendant simply because Epiphyte, pursuant to its commercial contract with Plaintiff, used its account with Defendant to exchange Plaintiff's cryptocurrency. "This case does not present the unfairness that equitable estoppel is designed to avoid." (*UFCW, supra,* 241 Cal.App.4th at p. 931.)

## DISPOSITION

The order denying Defendant's motion to compel arbitration is affirmed. Plaintiff is awarded its costs on appeal.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A160731)

13

Superior Court of San Francisco County, No. CGC-20-582705, Hon. Ethan P. Schulman, Judge.

Victor Rane, Mark S. Nurik, for Plaintiff and Respondent.

Baker Marquart, Brian E. Klein, Scott M. Malzahn, and Emily R. Stierwalt, for Defendant and Appellant.