[No. B219174. Second Dist., Div. Five. Feb. 18, 2010.]

YOUNG SEOK SUH et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CHA HOLLYWOOD MEDICAL CENTER, L.P., et al., Real Parties in
Interest.

## COUNSEL

Cohen & Lord, Bruce M. Cohen, Jonathan F. Golding; and John D. Harwell for Petitioners.

No appearance for Respondent.

Lim, Ruger & Kim, Bruce G. Iwasaki and Lisa J. Yang for Real Party in Interest, CHA Hollywood Medical Center, L.P.

Law Offices of Timothy B. McCaffrey, Jr., Timothy B. McCaffrey, Jr., for Real Parties In Interest, H.P. Anesthesia Medical Group, Inc., Hyung R. Shin, Sung T. Kim, Romeo Velasco and Sung H. Kim.

## OPINION

**MOSK, J.—**

### INTRODUCTION

Petitioners and plaintiffs Young Seok Suh and Yongkew Chung (plaintiffs) are anesthesiologists who were with a medical group that entered into two anesthesiology contracts with a hospital. They seek review of an order by the

trial court compelling arbitration. We grant their petition for writ of mandate, holding that plaintiffs did not agree to arbitrate disputes relating to one of the contracts and that the terms of the arbitration clause in the other contract are, because of the applicable rules limiting damage remedies, unconscionable, rendering the agreement to arbitrate unenforceable.

## BACKGROUND

Plaintiffs were anesthesiologists on the medical staff of real party in interest and defendant Hollywood Presbyterian Medical Center, L.P. CHA Hollywood Medical Center, L.P.,[1] which does business under the name "Hollywood Presbyterian Medical Center," operated the Hospital. In 2005, plaintiffs formed a group, "HP Anesthesia LLC" (HP LLC), with defendants and real parties in interests, Hyung R. Shin, Sung T. Kim, Romeo Velasco and Sung H. Kim,[2] all of whom are anesthesiologists. In 2006, HP LLC entered into an "Agreement for Anesthesiology Department Coverage" (2006 Agreement) with the Hospital "to provide all anesthesiology and pain management services at [the Hospital] and to supervise the operation of the Department." Plaintiffs became bound to that agreement by signing a "Waiver and Agreement" form.

A week later, the doctors in HP LLC formed HP Inc. to succeed HP LLC as a party to the 2006 Agreement, and the doctors, along with others, became shareholders of the corporation. The 2006 Agreement was assigned by HP LLC to HP Inc.

Plaintiffs allege that in 2008, they were removed from the Hospital Anesthesiology Department schedule because of their ages and their national origin. They contend that the defendant doctors hired a number of younger doctors. In 2008, HP Inc. and the Hospital entered into a new agreement for anesthesiology department coverage, again providing for anesthesiology services (2008 Agreement). Plaintiffs assert they did not sign or accede to that agreement and did not see or receive it until months after it had been executed. Plaintiffs allege that after their removal from the schedule, they did not practice medicine at the Hospital.

Plaintiffs, in their complaint, allege the following causes of action: national origin discrimination against the Hospital and HP Inc. in violation of

---

[1] CHA Hollywood Medical Center, L.P., and the hospital it operated are referred to as the Hospital.

[2] All of the real parties in interest are referred to as defendants.

Government Code section 12940, subdivision (a) (first); age discrimination against the Hospital and HP Inc. in violation of Government Code section 12940, subdivision (a) (second); aiding and abetting age "and/or" national origin discrimination against the Hospital in violation of Government Code section 12940, subdivision (i) (third); aiding and abetting age "and/or" national origin discrimination against HP Inc. and the individual doctor defendants in violation of Government Code section 12940, subdivision (i) (fourth); national origin discrimination in violation of Civil Code section 51 et seq. against the Hospital and HP Inc. (fifth); retaliation in violation of Government Code section 12940 et seq. against the Hospital (sixth); retaliation in violation of Health and Safety Code section 1278.5 against the Hospital (seventh); denial of the vested right to practice medicine against the Hospital (eighth); intentional contract interference against the Hospital (ninth); intentional prospective economic advantage interference against the Hospital (10th); intentional prospective economic advantage interference against HP Inc. and the individual doctor defendants (11th); contract breach against the individual doctor defendants (12th); contract breach against HP Inc. (13th); fiduciary duty breach against the individual doctor defendants (14th); negligence against the individual doctor defendants (15th); accounting against HP Inc. and the individual doctor defendants (16th); declaratory relief against the Hospital (17th); and declaratory relief against all named defendants (18th).

Defendants filed a petition to compel arbitration, invoking the following arbitration provision in the 2006 Agreement: "Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled by arbitration in Los Angeles County, California, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration and applying the laws of the State. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction thereof."

Defendants also rely upon the arbitration clause in the 2008 Agreement, which states in part: "Any dispute . . . arising under, out of or in connection with, or in relation to this Agreement . . . shall be determined and settled by arbitration in Los Angeles County, California, in accordance with the Commercial Rules of Arbitration . . . of the Judicial Arbitration and Mediation Services ('JAMS')[3] before one arbitrator applying the laws of the State. The parties shall attempt to mutually select the arbitrator. In the event they are unable to mutually agree, the arbitrator shall be selected by the procedures prescribed by the JAMS Rules. Any award rendered by the arbitrator shall be

---

[3] We refer to these rules as the JAMS Rules.

final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction thereof. The costs shall be borne equally by both parties."

Plaintiffs filed three declarations in opposition to the petition to compel arbitration. Suh described his age and ancestry, the Hospital's organization, and the organization of HP LLC. Suh stated he never received a copy of the 2006 Agreement, but was provided with the waiver document by which he acceded to the 2006 Agreement. Suh was told that if he did not execute the May 2006 waiver document, he would not be permitted to practice anesthesiology at the Hospital. Suh saw the 2006 Agreement only after he signed the waiver form, and he was never advised of the arbitration clause or its consequences. He contended that applying the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration (AHLA Rules), provided for in the 2006 Agreement, would result in a waiver of his rights and remedies to recover consequential, incidental, and punitive damages; HP LLC was not legally qualified to practice medicine, rendering the 2006 Agreement illegal; and he did not sign and was not provided a copy of the 2008 Agreement.

Suh further declared that among the original shareholders of HP Inc. were plaintiffs, the Kims, Shin, and Velasco. The original shareholders of HP Inc. never entered into a written shareholder's agreement, and no officers or directors were actually elected. Suh denied being a director, officer, or employee of HP Inc. Commencing in May 2006, he rendered anesthesiology services at the Hospital as provided for in the 2006 Agreement, for which services he was compensated. He included facts relating to his allegations of discrimination, including that he was removed from the Hospital's anesthesiology department schedule. He also alleged other acts of malfeasance.

In his declaration, Chung reiterated many of the points raised by Suh. Chung declared that he had not seen the 2006 Agreement until after he signed the waiver form and did not sign, nor was he provided with, the 2008 Agreement until September 2008. Chung further declared that on May 1, 2008, he was removed from the anesthesiology department schedule.

Jonathan Golding, plaintiffs' attorney, submitted a declaration to which he attached a copy of the AHLA Rules. Section 6.06 of the AHLA Rules states in part: "[T]he arbitrator may not award and there shall be no claim available for consequential, exemplary, incidental, punitive or special damages in an action other than an action arising from a tort unrelated to employment or the termination of employment. In an action arising from a tort unrelated to employment or the termination of employment, the arbitrator may not award consequential, exemplary, incidental, punitive or special damages against a

party unless the arbitrator determines, based on the record, that there is clear and convincing evidence that the party against whom such damages are awarded is guilty of conduct evincing an intentional or reckless disregard for the rights of another party or fraud, actual or presumed."

During the hearing, the trial court (respondent) stated it would grant defendants' petition to compel arbitration, but then raised the issue of severing the requirement to use the AHLA Rules, apparently because of the substantive unconscionability question. As noted, the AHLA Rules barred certain remedies.

The following colloquy between plaintiffs' counsel and the respondent court occurred concerning severing the AHLA Rules from the arbitration: "[COUNSEL]: . . . we won't waive our right to contest whether the court's decision is right on this obviously. [¶] . . . [¶] To the extent the court is going to issue an order in this manner, we would prefer if we have to arbitrate, to arbitrate under the JAMS rules as well. [¶] [THE COURT]: Without waiving objection to this ruling plaintiff agrees to the JAMS rules. Okay? Can we get defense to prepare an order?" The April 8, 2009 minute order states: "The petition by defendants to compel arbitration is GRANTED. [¶] Without waiving objection to this ruling, the plaintiff agrees to JAMS rules for arbitration."

A series of proposed orders and objections ensued. Plaintiffs argued that they never agreed to use the JAMS Rules. Plaintiffs, in objecting to the proposed order granting the petition to compel arbitration, stated, "[C]ounsel stated on the record that the Plaintiffs would not waive their right to contest the Court's ruling, but if the Court was going to issue an order and force the Plaintiffs to arbitrate, the Plaintiffs would prefer to arbitrate under the JAMS rules." The last filing with the respondent court concerning the written order was filed on April 15, 2009.

On June 8, 2009, Suh and Chung filed a mandate petition challenging the April 8, 2009 minute order. On July 16, 2009, we denied the petition because the final written order had not been filed. (*Suh v. Superior Court* (July 16, 2009, B216602) [nonpub. order].) On July 30, 2009, the respondent court issued its ruling: "The Court grants defendants' petition to compel arbitration. The Court finds that a valid and enforceable arbitration agreement exists between the parties and that all of the alleged claims are within the scope of the arbitration agreement. The Court further finds that to the extent the arbitration provision within the 2006 Agreement for Anesthesiology Department Coverage contains any unconscionable provision, that provision is hereby severed. The Court further orders that consistent with the parties' 2008 Agreement and stipulation of counsel on the record at the hearing of the

petition, the parties are to conduct the arbitration pursuant to the applicable rules of the Judicial Arbitration and Mediation Services."

Plaintiffs filed the petition for writ of mandate in this proceeding on September 28, 2009. In their petition, plaintiffs contend that no arbitration agreement existed from May 19, 2008 (the date of the 2008 Agreement), to the present; the 2006 Agreement was illegal and could not be assigned or enforced; defendants concede the 2008 Agreement superseded the 2006 Agreement resulting in a novation; and the arbitration clause in the 2006 Agreement is substantively and procedurally unconscionable. Defendants contend that plaintiffs consented to arbitration under the 2006 Agreement because they signed the waiver documents; plaintiffs' claim that they never bothered to read the arbitration provision is not a defense to its enforceability; plaintiffs are bound by the arbitration provisions even though they were nonsignatories; the 2008 Agreement was executed after the 2006 Agreement had expired; the 2006 Agreement is neither procedurally nor substantively unconscionable; plaintiffs, as nonsignatories to the 2008 Agreement, are nevertheless bound by that agreement because of their status in HP Inc. and because they accepted the benefits of the 2008 Agreement; to the extent the AHLA Rules provided for in the 2006 Agreement are unconscionable, they could be severed; and plaintiffs agreed that the JAMS Rules could be utilized.

## DISCUSSION

### A.  *Demurrer*

Defendants demurred to the petition on the ground that no writ may issue because plaintiffs are obligated to arbitrate. This court may, however, issue a writ to set aside an order compelling arbitration. (*Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 161 [53 Cal.Rptr.3d 69] ["this court may properly review the trial court's order compelling arbitration by writ of mandate"].) Because we grant the petition for a writ, we overrule the demurrer.

### B.  *Standards of Review and Legal Principles*

The trial court's resolution of disputed facts will be upheld if supported by substantial evidence, but if there is no disputed extrinsic evidence, the trial court's decision on the arbitrability determination is reviewed de novo. (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1283 [63 Cal.Rptr.3d 787]; *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277 [16 Cal.Rptr.3d 296].) " 'Whether an arbitration provision is unconscionable is ultimately a question of law.' " (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567 [98 Cal.Rptr.3d 743]; see *Flores v. Transamerica*

*HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 851 [113 Cal.Rptr.2d 376].) "On appeal, when the extrinsic evidence is undisputed, as it is here, we review the contract de novo to determine unconscionability." (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 579 [61 Cal.Rptr.3d 344]; see *Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 714 [129 Cal.Rptr.2d 659].)

■ Code of Civil Procedure section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." California courts have uniformly acknowledged that there is a strong public policy in favor of arbitration. (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 25–26 [58 Cal.Rptr.3d 434, 157 P.3d 1029]; see also *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971–972 [64 Cal.Rptr.2d 843, 938 P.2d 903]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Thus, "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. [Citations.]" (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251].) "Despite the strong policy favoring arbitration, there are circumstances in which California courts may invalidate or limit agreements to arbitrate. Employing 'general contract law principles,' courts will refuse to enforce arbitration provisions that are 'unconscionable or contrary to public policy.' [Citation.]" (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 651 [9 Cal.Rptr.3d 422], quoting *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

■ "Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245 [54 Cal.Rptr.2d 628]; see *Rowe v. Exline, supra,* 153 Cal.App.4th at p. 1284.) Whether an arbitration agreement is operative against a nonsignatory is determined by the trial court and reviewed de novo. (See *Boys Club of San Fernando Valley, Inc. v. Fidelilty & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271 [8 Cal.Rptr.2d 587].)

## C. 2008 Agreement

■ Plaintiffs assert that because they are not parties to the 2008 Agreement, they are not bound by its arbitration clause. The 2008 Agreement is between the Hospital and HP Inc. The arbitration clause in that agreement does not refer to the obligation of any employee or shareholder of HP Inc.

There is no evidence that any of the plaintiffs agreed to arbitrate any dispute arising out of the 2008 Agreement. Plaintiffs declare they did not even see the 2008 Agreement until months after it was executed. Persons are not normally bound by an agreement entered into by a corporation in which they have an interest or are employees. (See *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358].)

■ There are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement. As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary" (2 Oehmke, Commercial Arbitration (3d ed. 2006 update) § 41.57, pp. 41–195; see *Dryer v. L.A. Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826] [agency]; *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209 [92 Cal.Rptr.3d 534] [recognizing but denying equitable estoppel]; *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511 [81 Cal.Rptr.3d 892] [agency and third party beneficiary]; *Rowe v. Exline, supra*, 153 Cal.App.4th at pp. 1284–1285 [alter ego and equitable estoppel]; *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262 [25 Cal.Rptr.3d 440] [equitable estoppel]; *Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 790–791 [4 Cal.Rptr.3d 179] [incorporation of arbitration clause]; *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705 [1 Cal.Rptr.3d 328] [equitable estoppel]; *Magness Petroleum Co. v. Warren Resources of Cal., Inc.* (2002) 103 Cal.App.4th 901, 909–910 [127 Cal.Rptr.2d 159] ["limited circumstances" of "waiver, estoppel or an oral agreement reflected in written court or other record"]; *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 81–82 [100 Cal.Rptr.2d 683] [person who accepts benefits under agreement containing arbitration clause bound by the clause]; *County of Contra Costa v. Kaiser Foundation Health Plan, Inc., supra*, 47 Cal.App.4th at p. 242 [third party beneficiary]; *Marsch v. Williams* (1994) 23 Cal.App.4th 250, 255 [28 Cal.Rptr.2d 398] [agreement to arbitrate may be in a "collateral document which is incorporated by reference"]; *Harris v. Superior Court* (1986) 188 Cal.App.3d 475 [233 Cal.Rptr. 186] [third party beneficiary]; *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999 [119 Cal.Rptr. 130] [agency]; *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 671–672 [97 Cal.Rptr. 811] [part of agreement].)

Defendants claim that plaintiffs, although nonsignatories, are bound by the 2008 Agreement as third party beneficiaries, agents or employees of HP Inc., or as having accepted the benefits of the 2008 Agreement. There is no evidence, however, that plaintiffs actually derived any benefits either as third party beneficiaries or otherwise. The uncontradicted evidence is that by the

time of the 2008 Agreement and thereafter, plaintiffs were not obtaining any work at the Hospital. That they were employees of HP Inc. does not mean they were bound by the arbitration clause in an agreement between HP Inc. and the Hospital. This is not a situation in which individual defendants were agents of the corporate defendant, were alleged to be parties to the agreement, and sought the benefit of the arbitration clause in the contract. (See *Dryer v. L.A. Rams, supra,* 40 Cal.3d at p. 418.) Plaintiffs did not sign the 2008 Agreement on behalf of HP Inc. as principals and did not benefit from that agreement. (See *RN Solution, Inc. v. Catholic Healthcare West, supra,* 165 Cal.App.4th at p. 1520.) They are not otherwise bound by the contract under agency principles.

Unlike *Harris v. Superior Court, supra,* 188 Cal.App.3d 475, relied upon by defendants, this case is not one for medical malpractice. In that case, the court held that a physician was bound by the arbitration provision in a contract between his medical group and the health plan in connection with a malpractice action because as an employee of the medical group, he had treated the plaintiff patient and thus voluntarily had accepted the benefits under the contract. Here, plaintiffs are suing the medical group and the Hospital rather than defending a medical malpractice case brought by patients against them and the medical group.

Defendants also rely upon *Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222 [269 Cal.Rptr. 259]. There, a general partner of a limited partnership signed a contract containing an arbitration clause. Unlike in this case, the general partner himself signed the agreement and was legally bound in his capacity as a general partner. Here, plaintiffs are shareholders of a corporation, and the agreement was not signed by them individually or on behalf of the corporation. Therefore, the 2008 Agreement provides no basis for compelling arbitration in this case.

### D. *2006 Agreement*

The 2006 Agreement provides for arbitration "in accordance with the [AHLA Rules] and applying the laws of the State." Those rules prohibit an award of "consequential, exemplary, incidental, punitive or special damages" except in tort cases "unrelated to employment or termination of employment." The rules specify, "In an action arising from a tort unrelated to employment or the termination of employment, the arbitrator may not award consequential, exemplary, incidental, punitive or special damages against a party unless the arbitrator determines, based on the record, that there is clear and convincing evidence that the party against whom such damages are awarded is guilty of conduct evincing an intentional or reckless disregard for the rights of another party or fraud, actual or presumed." Thus, there is an

absolute bar to a claim for consequential, punitive, incidental or special damages in a case related to employment. The rules also require each party to share in the arbitration expenses, empower the arbitrator to assess expenses against any of the parties, place certain limitations on discovery, and do not compel a reasoned opinion or findings by the arbitrator.

Here, there are claims for breach of contract, an accounting, and declaratory relief to which the limitations in the AHLA Rules apply. There are also statutory claims to which the limitations may apply. Some of the tort claims are related to employment and are also subject to the AHLA Rules limitations. Thus, the AHLA Rules limitations would impact many of the claims.

■ Plaintiffs contend that the 2006 Agreement is both procedurally and substantively unconscionable rendering the arbitration clause unenforceable. Procedural unconscionability focuses on oppression, surprise and the manner in which the agreement was negotiated. (*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 113 [12 Cal.Rptr.3d 663].) Substantive unconscionability focuses on "the actual terms of the agreement and evaluates whether they create such ' "overly harsh" ' or ' "one-sided" ' results as to ' "shock the conscience." ' " (*Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 808 [49 Cal.Rptr.3d 555]; see generally *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 980; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1469–1470 [92 Cal.Rptr.3d 153].) As the Supreme Court has said, the "prevailing view" is that both procedural and substantive unconscionability must be present before a court can refuse to enforce an arbitration provision based on unconscionability. (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 469 [64 Cal.Rptr.3d 773, 165 P.3d 556].) The court added that the absence of procedural unconscionability would as a "logical conclusion" mean that "no matter how one-sided the contract terms, a court will not disturb the contract . . . ." (*Id.* at p. 470; see Civ. Code, § 1670.5.) Although both substantive and procedural unconscionability are required, they "need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.)

The severe AHLA Rules limitations on remedies are substantively unconscionable. (*Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1407–1408 [7 Cal.Rptr.3d 418]; *Stirlen v. Supercuts* (1997) 51 Cal.App.4th 1519, 1539–1540 [60 Cal.Rptr.2d 138]; see also *Armendariz, supra,* 24 Cal.4th at pp. 104, 113–114; *Gelow v. Central Pacific Mortg. Corp.* (E.D.Cal. 2008) 560 F.Supp.2d 972, 981 [for arbitration clause in employment contract to be

"lawful, it must allow for all types of relief that a court could order"].)[4] Defendants do not dispute this conclusion. These limitations are significant elements of the contract. By limiting the arbitrator's power to provide various remedies, plaintiffs may be left with the possibility of having to seek relief for the excluded remedies in a separate judicial proceeding.

There is also uncontradicted evidence of procedural unconscionability. The arbitration clause is on page 13 of the 2006 Agreement in the same typeface as the balance of the agreement. Plaintiffs declared that they were required to sign a printed form "Waiver and Agreement" binding them to the 2006 Agreement without having the opportunity to see that agreement and as a condition of practicing anesthesiology at the Hospital. The offending rules were not provided to them. This uncontradicted evidence establishes procedural unconscionability. (See *Harper v. Ultimo, supra*, 113 Cal.App.4th at pp. 1406–1407 [referencing restrictive rules without providing them].) Accordingly, weighing the substantive and procedural unconscionability, we conclude that the arbitration provision in the 2006 Agreement is unconscionable.

Moreover, the AHLA Rules cannot be severed from the arbitration clause. The agreement does not provide for any replacement rules. (See *Parada v. Superior Court, supra*, 176 Cal.App.4th at p. 1586 ["Severance is not permitted if the court would be required to augment the contract with additional terms."].) Being in a health provider agreement, these particular health-industry-related rules are an integral part of and permeate the arbitration provision and therefore are not severable. (*Armendariz, supra*, 24 Cal.4th at pp. 121–122, quoting Legis. Com. com., 9 West's Ann. Civ. Code (1985 ed.) foll. § 1670.5, p. 494.)

Defendants did not specifically argue that the restriction on remedies in the AHLA Rules should be severed from the rules, and there is no authority permitting such a severance. The respondent court was vague in what actually was being severed by stating "to the extent [the agreement] contains any unconscionable provision, that provision is hereby severed." In any event, the AHLA Rules limitation of remedies clause cannot practically be severed. The AHLA Rules specify that their entire framework is a cost containment measure of which the limitation of liability is a prime feature. Those rules specify in

---

[4] To the extent the damage limitation clause applies to statutorily imposed remedies, such as punitive damages, it is "contrary to public policy and unlawful." (*Armendariz, supra*, 24 Cal.4th at p. 104.) Moreover, plaintiffs' claims involve employment-type disputes, and thus the applicable rules may run afoul of the requirements of *Armendariz, supra*, 24 Cal.4th at pages 103–113, in connection with cost and fee splitting, limitations on discovery, and no requirement for written findings. Recent decisions approve certain limitations on discovery. (See *Dotson v. Amgen, Inc., supra*, 181 Cal.App.4th at pp. 982–984; *Roman v. Superior Court, supra*, 172 Cal.App.4th at pp. 1475–1476.)

the introduction that, "The healthcare industry is under great pressure to contain costs in every way possible." The rules provide that "[t]he parties shall be bound by these Rules whenever they have agreed in writing to arbitration by the Service or under the Rules." A principal aspect of the rules is the limitation on the arbitrator to award consequential and punitive damages.

The Supreme Court has said, "We need not decide whether the unlawful damages provision in this arbitration agreement, by itself, would be sufficient to warrant a court's refusal to enforce that agreement. . . . Because we resolve this case on other grounds, we need not decide whether the state of the law with respect to damages limitations was sufficiently clear at the time the arbitration agreement was signed to lead to the conclusion that this damages clause was drafted in bad faith." (*Armendariz, supra,* 24 Cal.4th at pp. 124–125, fn. 13.) The court said that if the offending clause was drafted in "bad faith," severance would be "disfavored." (*Ibid.*; see *Parada v. Superior Court, supra,* 176 Cal.App.4th at p. 1586.)

The limitation on damages in this case is so egregious and so draconian that it should not be permitted to be severed. Otherwise, parties will be encouraged to insert such clauses, with the only sanction being the removal of the clause. (*Armendariz, supra,* 24 Cal.4th at p. 124, fn. 13.) That the AHLA Rules limitation of remedy clause was buried in the arbitration clause, rather than being a separate provision, suggests it was not intended to be easily reviewed. It is also telling that as reflected in the 2008 Agreement, by 2008, the parties did not even impose the AHLA Rules, but rather provided for JAMS Rules.

It is the 2008 Agreement, to which plaintiffs are not bound, that provided for arbitration utilizing the JAMS Rules. An oral statement by plaintiffs' counsel about a willingness to arbitrate under JAMS Rules if the arbitration was compelled (reserving the position that arbitration could not be compelled) does not constitute an agreement by plaintiffs to arbitrate or to arbitrate under those rules. (Code Civ. Proc., § 1281 [requiring written agreement]; *Magness Petroleum Co. v. Warren Resources of Cal., Inc., supra,* 103 Cal.App.4th at pp. 907, 910, 909 [neither "oral agreement to arbitrate" nor "oral modification of a written agreement to arbitrate" enforceable unless "reflected in a written court or other record"].) Plaintiffs did not unequivocally enter into any stipulation in court to arbitrate under the JAMS Rules. Accordingly, we conclude that the arbitration clause in the 2006 Agreement is not enforceable.

## DISPOSITION

The petition for writ of mandate is granted. The demurrer is overruled. Respondent court shall set aside its order compelling arbitration and shall deny defendants' petition to compel arbitration. Plaintiffs are awarded their costs.

Turner, P. J., and Kriegler, J., concurred.