Filed 12/17/25  Valentine v. Orthofix Medical CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| KEITH VALENTINE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ORTHOFIX MEDICAL INC., et al., <br><br> Defendants and Respondents. | D085105, D085407 <br><br><br> (Super. Ct. No. 37-2024-00013119-CU-PT-CTL) |

CONSOLIDATED APPEALS from a judgment and an order of the Superior Court of San Diego County, Loren G. Freestone, Judge.  Affirmed.

Hill, Farrer & Burrill, William A. White; Olshan Frome Wolosky, Kyle C. Bisceglie and Tamar Prince for Plaintiffs and Appellants.

Quinn Emanuel Urquhart & Sullivan, Melissa J. Baily, Duncan C. Hall, Nazeerah M. Ali, Christopher S. Lindsay and Kaitlin E. Keohane for Defendants and Respondents.

# I

## INTRODUCTION

Plaintiffs Keith Valentine, Patrick Keran, and John Bostjancic briefly served as high-ranking executive officers of Orthofix Medical, Inc. (Orthofix) before the company terminated their employment for alleged misconduct. According to the plaintiffs, Orthofix and its board of directors committed various torts, breached their contracts with the plaintiffs, and defamed the plaintiffs in connection with the termination of their employment.

The plaintiffs and Orthofix were signatories to written arbitration agreements requiring individual arbitration of claims arising out of the employment relationship. After Orthofix terminated the plaintiffs' employment, the plaintiffs filed a lawsuit in superior court requesting various court orders including an order compelling two of the company's directors, Catherine Burzik and Wayne Burris (hereafter, the directors), into arbitration. The court declined to compel the directors into arbitration on the ground that they were not signatories to the arbitration agreements between the plaintiffs and the company. The court then sustained a demurrer to the plaintiffs' pleading and entered judgment for the defense.

The plaintiffs appeal the order denying their request to compel the nonsignatory directors into arbitration, arguing the directors are bound by the arbitration agreements between the plaintiffs and the company because the directors are third-party beneficiaries of the agreements, the directors are agents of the company, and the plaintiffs' claims against the directors are interconnected with their claims against the company. The plaintiffs also appeal the defense judgment and contend the trial court abused its discretion by denying them leave to amend their pleading.

We reject these arguments and affirm.

2

## II

## BACKGROUND

A. *Factual Background*

Prior to 2023, the plaintiffs served as high-level executive officers at SeaSpine, Inc., a medical technology company. On January 5, 2023, SeaSpine, Inc. merged with Orthofix and became its wholly-owned subsidiary. After the merger, the plaintiffs assumed executive leadership positions at Orthofix: Valentine became the chief executive officer, Bostjancic became the chief financial officer, and Keran became the chief legal officer. At all relevant times, the directors were members of Orthofix's board of directors.

Orthofix and each plaintiff executed an arbitration agreement, effective June 19, 2023, which was incorporated by reference into a change in control and severance agreement executed by the parties. Subject to exceptions not relevant here, the arbitration agreement requires Orthofix and each plaintiff to individually arbitrate "all disputes that might arise out of or be related in any way" to the employment relationship. According to the arbitration agreement, each plaintiff's commitment to arbitrate claims against the company "includes claims [the plaintiff] might bring against the [c]ompany's parent, subsidiary, sibling, affiliated or client entities as well as against their respective owners, *directors*, officers, managers, employees, *agents*, contractors, attorneys, benefit plan administrators, and insurers." (Italics

added.)  The directors were not parties to the agreements and did not execute the agreements on behalf of the company.[1]

In September 2023, just three months after Orthofix and the plaintiffs entered into these agreements, Orthofix terminated the plaintiffs for cause for allegedly engaging in inappropriate and offensive conduct.

In December 2023, the plaintiffs served Orthofix and the directors with written arbitration demands.  They alleged Orthofix and its board wrongfully terminated the plaintiffs, breached their contracts with the plaintiffs, and publicly defamed the plaintiffs.  After receiving the arbitration demands, the directors maintained that the claims against them were not arbitrable because the directors were not signatories to the arbitration agreements between the plaintiffs and Orthofix.

B. *Procedural History*

On March 18, 2024, the plaintiffs initiated a lawsuit against Orthofix and the directors in the Superior Court for the County of San Diego.  The plaintiffs' petition and complaint alleged two "counts" seeking (1) an order appointing an arbitrator to preside over the arbitration proceedings, and (2) an order relating and consolidating all of the parties' arbitration proceedings, and two "causes of action" requesting (3) an order compelling the defendants to "specifically perform their arbitration obligations" under the arbitration agreements, and (4) a declaration concerning the parties' rights and obligations under the arbitration agreements.

---

[1]     A human resource officer executed the arbitration agreements on behalf of the company, a director who was not a party to the present lawsuit executed Valentine's change in control and severance agreement on behalf of the company, and Valentine himself executed Keran and Bostjancic's change in control and severance agreements on behalf of the company.

On May 6, 2024, the plaintiffs filed an application requesting that the trial court grant the relief sought in the petition and complaint. They acknowledged the directors were not signatories to the arbitration agreements. However, they argued the directors were nonetheless required to submit to arbitration because they were third-party beneficiaries of the agreements and agents of Orthofix, which was a signatory to the agreements.

The same day, Orthofix and the directors demurred to the petition and complaint. Orthofix did not dispute that the plaintiffs' substantive claims against the company were arbitrable; however, it argued the arbitration agreements foreclosed the specific relief sought in the petition and complaint.[2] Meanwhile, the directors demurred on the ground they were not signatories to the arbitration agreements.

Orthofix and the directors subsequently opposed the plaintiffs' application for relief on the same grounds set forth in their demurrer. The directors additionally argued they were not third-party beneficiaries of the arbitration agreements. They also argued that third-party beneficiary and agency principles can only be invoked to determine whether a nonsignatory can *enforce* an arbitration agreement *against* a signatory—not to compel an unwilling nonsignatory into arbitration.

The trial court issued a tentative order denying the application for relief, which the court confirmed after a hearing on September 6, 2024. The court found the directors did not sign the arbitration agreements or the change in control and severance agreements. It also found the plaintiffs did

---

[2]    Orthofix argued the arbitration agreements required the arbitrator—not the court—to decide the question of consolidation of claims, the arbitration agreements prohibited consolidation of claims belonging to different claimants, and the arbitration agreements provided the method by which to select the presiding arbitrator.

not submit sufficient evidence to show the agreements personally benefitted the directors; on the contrary, the control and severance agreements containing the arbitration agreements "only benefitted [the plaintiffs]." Therefore, the court concluded there was no basis to deviate from the general rule that arbitration agreements are unenforceable against nonsignatories like the directors.

Thereafter, the court issued a tentative ruling sustaining the demurrer without leave to amend, which the court confirmed after a hearing on October 25, 2024. In sustaining the demurrer, the court found the causes of action were entirely "duplicative" of the application for relief, which the court had denied. The court noted that the plaintiffs sought leave to allege additional facts concerning "developments after [the] filing" of the petition and complaint. However, the court found that allegations postdating the filing of a pleading must be asserted in a supplemental pleading—not an amended pleading—and the plaintiffs did not seek leave to file a supplemental pleading. After sustaining the demurrer without leave to amend, the court entered judgment for the defense.

The plaintiffs filed separate timely notices of appeal from the order denying their application to compel the directors into arbitration and the ensuing judgment in favor of the defense.[3]

---

[3] The plaintiffs request that we take judicial notice of certain court filings from *Valentine et al. v. Burzik et al.*, Superior Court of San Diego County, Case No. 24CL010340C, a separate lawsuit the plaintiffs filed against the directors after the trial court denied their application for relief in this case. We deny the request as irrelevant to the present appeal.

## DISCUSSION

### A. *The Trial Court Properly Denied the Plaintiffs' Application to Compel the Nonsignatory Directors into Arbitration*

The Plaintiffs contend the trial court erred when it declined to compel the nonsignatory directors into arbitration. They present three theories as to why the directors were bound by the arbitration agreements between the plaintiffs and Orthofix: (1) the directors were third-party beneficiaries of the arbitration agreements and the change in control and severance agreements; (2) the directors were agents of Orthofix; and (3) the plaintiffs' claims against the directors are inherently bound up in, or interconnected with, their arbitrable claims against Orthofix.

For reasons we shall explain, we conclude the court properly denied the plaintiffs' request to compel the nonsignatory directors into arbitration.

#### 1. *Legal Standards*

The arbitration agreements state, "Any arbitration proceeding under this Agreement shall proceed under and be governed by the Federal Arbitration Act (FAA) …." Under the FAA, any written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract …." (9 U.S.C. § 2.) "Unless an exception applies, if the matter is arbitrable, the court 'shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ….'" (*Ford Motor Warranty Cases* (2025) 17 Cal.5th 1122, 1128 (*Ford Motor*), quoting 9 U.S.C. § 3.) "The FAA reflects a policy favoring arbitration, requiring that agreements to arbitrate be enforced in the same manner as any other contract." (*Ford Motor*, at p. 1128 accord *Broughton v.*

*Cigna Healthplans* (1999) 21 Cal.4th 1066, 1074 ["California has a similar statute … and a similar policy in favor of arbitration."].)

" 'A motion to compel arbitration is essentially a request for specific performance of a contractual agreement.' " (*Consumer Advocacy Group, Inc. v. Walmart, Inc.* (2025) 112 Cal.App.5th 679, 690.) " '[I]n ruling on a motion to compel arbitration, the court must first determine whether the parties actually agreed to arbitrate the dispute. [Citations.] General principles of California contract law guide the court in making this determination.' " (*Ford Motor*, 17 Cal.5th at p. 1128 see *Mattson Technology, Inc. v. Applied Materials, Inc.* (2023) 96 Cal.App.5th 1149, 1156 ["Arbitration is a matter of contract, and the threshold question for a court is whether an agreement between the parties exists."].) " ' "The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." ' " (*People v. Maplebear Inc.* (2022) 81 Cal.App.5th 923, 932.)

"Although there is a strong public policy in favor of contractual arbitration, there is no policy compelling anyone to accept arbitration of controversies which they have not agreed to arbitrate." (*Soltero v. Precise Distribution, Inc.* (2024) 102 Cal.App.5th 887, 892 (*Soltero*); see *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 651 ["the 'first principle' of our FAA jurisprudence" is "that '[a]rbitration is strictly "a matter of consent" ' "].) "Because arbitration is a matter of contract, the basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it—with limited exceptions." (*Soltero,* at pp. 892–893.)

" ' "Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review." ' [Citations.] Nevertheless, we presume the court found every fact and drew every permissible inference necessary to support its judgment or order, and we

8

defer to the court's determination of credibility of the witnesses and weight of the evidence in resolving disputed facts. [Citation.] '[I]f there are material facts in dispute, we must accept the trial court's resolution of such disputed facts when supported by substantial evidence.' " (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 859 (*Cohen*); see *Pacific Fertility Cases* (2022) 85 Cal.App.5th 887, 892 [" 'On appeal from an order denying a petition to compel arbitration, we review the trial court's factual determinations under the substantial evidence standard, and we review the legal issues independently.' "].)

### 2. *The Trial Court Properly Ruled the Directors Are Not Third-Party Beneficiaries*

The plaintiffs' primary argument on appeal is that the trial court erred by denying their request to compel the directors into arbitration because they are third-party beneficiaries of the agreements between the plaintiffs and Orthofix. The third-party beneficiary doctrine is an "exception to the usual rule that only a party to an arbitration agreement may enforce it" or, as relevant here, be bound by it. (*Soltero, supra*, 102 Cal.App.5th at p. 898.)

"A third party beneficiary is someone who may enforce a contract because the contract is made expressly for his benefit." (*Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 602; see Civ. Code, § 1559 ["A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."].) When considering whether a nonsignatory is a third-party beneficiary, a court must "carefully examine[] the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to," in order to determine "whether the third party … in fact benefit[s] from the contract," and "whether a motivating purpose of the contracting parties was to provide a benefit to the third party …." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 829–830 )

9

(*Goonewardene*); *Philadelphia Indemnity Ins. v. SMG Holdings, Inc.* (2019) 44 Cal.App.5th 834, 841 ["Whether a nonsignatory is an intended third party beneficiary to the contract is determined from the parties' intent, as gleaned from the contract as a whole and the circumstances under which it arose."].)

"A person 'only incidentally or remotely benefited' from a contract is not a third party beneficiary. [Citation.] Thus, 'the "mere fact that a contract results in benefits to a third party does not render that party a 'third party beneficiary.' " ' [Citation.] Nor does knowledge that the third party may benefit from the contract suffice. [Citation.] Rather, the parties to the contract must have *intended* the third party to benefit." (*Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, 1336; see *Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 302 (*Jensen*) ["the terms of the contract must demonstrate the express intent to confer the benefit"].)

The plaintiffs claim the directors are third-party beneficiaries of the control and severance agreement—which encompassed the arbitration agreement through incorporation by reference—because the control and severance agreement enabled Orthofix to hire the plaintiffs and obtain their leadership, employment, and corporate management services. According to the plaintiffs, their contributions to the company, in turn, benefitted the directors because the directors received financial compensation, stock, and prestige due to their positions on the company's board of directors.

We reject the plaintiffs' argument. As a preliminary matter, "the question is not whether [each director] is a third-party beneficiary of the contract containing the arbitration clause, but whether [the director] is a third-party beneficiary of the arbitration clause itself." (*Soltero, supra*, 102 Cal.App.5th at p. 898.) "To invoke the third-party beneficiary exception, the [movant] ' "ha[s] to show that *the arbitration clause ...* was 'made expressly

10

for [the director's] benefit.' " " ' " (*Ibid.*, quoting *Fuentes v. TMCSF, Inc.* (2018) 26 Cal.App.5th 541, 552.) "Thus, even assuming that [the directors] could be considered [] third-party beneficiar[ies] of the [control and severance] agreement," based on the employment-related services the company procured from the plaintiffs through its use of the control and severance agreement, the plaintiffs "ha[ve] failed to demonstrate that [the directors are] intended third-party beneficiar[ies] of the arbitration agreement." (*Soltero*, at p. 899.)

The plaintiffs' argument fails for additional reasons. It assumes the company's hiring of the plaintiffs as corporate officers conferred significant advantages on Orthofix and those alleged advantages personally benefitted the directors. However, as the trial court aptly found, the plaintiffs—who carried the burden of proof in the proceedings below—did not submit "sufficient *evidence* to show that the agreements personally benefitted" the company or the directors in any of the ways the plaintiffs describe. (Italics added.) (See *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513 (*Suh*) [rejecting claim that nonsignatory employees could be compelled into arbitration where "[t]here [was] no evidence … [they] actually derived any benefits" from arbitration agreement between employer and hospital]; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 991–992 (*Benasra*) [nonsignatory could not be compelled into arbitration where "there [was] no evidentiary support" proving nonsignatory was third-party beneficiary].)

In any event, the manifest purpose of the change in control and severance agreements is—according to the agreements themselves—to "provide the [plaintiffs] with severance benefits" in exchange for their "dedication, loyalty, and service" to the company—not to benefit the directors. Thus, even if the plaintiffs had submitted evidence to support their uncorroborated claim that the directors financially and professionally

11

benefitted in some manner, any benefits the directors might have obtained from the company's hiring of the plaintiffs are far too attenuated to conclude the directors are intended third-party beneficiaries of the change in control and severance agreements. (See *Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 685–686 [physician association could not be forced to arbitrate as third-party beneficiary of agreement between medical group and insurance provider where agreement produced only "incidental" benefits for association]; compare *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1520 (*RN Solution*) [CEO bound by arbitration provisions in recruitment agreement between her company and another company because she "benefited financially and professionally from the recruitment agreement"].)

The plaintiffs present a second argument to support their third-party beneficiary theory. They claim the directors are third-party beneficiaries because the arbitration agreements state that the plaintiffs' commitment to arbitrate claims against the company includes claims against its "agents" and "directors," among countless other individuals. In the plaintiffs' view, this contractual provision benefits the directors because it grants them an asymmetric option to choose to litigate or arbitrate the plaintiffs' claims, and to force their choice on the plaintiffs. We are not persuaded. In short, the plaintiffs' argument presupposes the directors would be entitled to compel arbitration as third-party beneficiaries, if the directors desired to do so. But that conjecture is incorrect for the reasons we have outlined above.

In this regard, the present case is analogous to *Benasra, supra*, 92 Cal.App.4th 987. In *Benasra*, two companies (PLB and Guess) entered into licensing agreements with arbitration provisions. (*Id.* at p. 989.) After the companies' business relationship soured, the president of PLB—who executed

12

the agreements on behalf of his company and was not himself a signatory to the agreements—sued Guess and its president for defamation. (*Ibid*.) The defendants moved to compel arbitration of the defamation suit under the companies' arbitration provisions. (*Id*. at pp. 989–990.) They argued PLB's president was a third-party beneficiary of the arbitration provisions because, under the agreements, the parties did not have a " 'symmetrical' " right to compel arbitration against one another; rather, PLB's president had the option to "use the judicial system to vindicate his rights while at the same time foreclosing his adversary from comparable access." (*Id*. at p. 992.) The court rejected this argument, reasoning that if "the shoe [was] on the other foot—if [the PLB president had] wanted to arbitrate his defamation claim but Guess did not—[the court] would [have] reach[ed] the same result—because [the court] [did] not believe [the] record would support an order compelling arbitration in response to the unilateral demand of either party." (*Ibid*.)

We reach the same conclusion here. If the shoe were on the other foot and the nonsignatory directors were seeking to enforce the arbitration agreements as third-party beneficiaries, we would conclude on the record before us that the directors are not third-party beneficiaries entitled to enforce the agreements. The directors are not expressly designated as third-party beneficiaries in the agreements.[4] They did not sign the agreements, either on behalf of themselves or on behalf of Orthofix. No evidence was

---

[4]    In their opening brief, the plaintiffs misleadingly state that the arbitration agreements "specifically name[] 'directors' as intended third-party beneficiaries." They do not. When the court questioned plaintiffs' counsel about the misstatement during oral argument, counsel doubled down on the misrepresentation rather than correcting the record. "We remind counsel that he has a duty of candor to the court, precluding the making of false statements of fact or law." (*Morales v. City and County of San Francisco* (2025) 114 Cal.App.5th 43, 54, fn. 6.)

submitted that they obtained any benefits from the agreements between Orthofix and the plaintiffs. Further, the plaintiffs introduced no evidence that "a motivating purpose of the contracting parties was to provide a benefit" to the directors. (*Goonewardene, supra*, 6 Cal.5th at p. 830.) For all these reasons, we conclude the nonsignatory directors do not benefit from the alleged asymmetry of the arbitration agreements.[5] (See *Benasra, supra*, 92 Cal.App.4th at p. 992; accord *Jensen, supra*, 18 Cal.App.5th at pp. 299, 301–302 [employee was not third-party beneficiary of agreement requiring arbitration of claims between his employer, another company, and the companies' "agents[] and employees"].)

### 3. *The Trial Court Properly Ruled That the Directors Could Not be Compelled to Arbitrate Based on Agency Principles*

Next, the plaintiffs argue the trial court erred by denying their request to compel the nonsignatory directors into arbitration because the directors were agents of Orthofix, which was a signatory to the arbitration agreements.

---

[5] Our conclusion that the directors do not benefit from the alleged asymmetry of the agreements is one of several factors distinguishing this case from *Harris v. Superior Court* (1986) 188 Cal.App.3d 475 (*Harris*). In *Harris*, the court required a nonsignatory physician to arbitrate two patients' medical malpractice claims pursuant to arbitration provisions set forth in a health plan's patient enrollment form to which the physician's professional corporation was a signatory. The provisions required arbitration of claims against the corporation and its "employees," and the court had "no doubt" the physician could exercise this "right to compel arbitration of a malpractice claim against him." (*Id.* at p. 478.) Further, the physician "obtained patients through enrollments" in the health plan and "raised binding arbitration as [an] affirmative defense[]" to the malpractice action. (*Id.* at p. 477.)

By contrast, we would not enforce the arbitration agreements if the directors were invoking them to pursue arbitration. Moreover, the appellate record contains no evidence that the relevant agreements provided any personal benefits to the directors and the directors did not rely on arbitration as an affirmative defense to the plaintiffs' petition and complaint.

14

"An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) " 'The agency exception is [an] exception to the general rule that only a party to an arbitration agreement may enforce it.' " (*Soltero, supra*, 102 Cal.App.5th at p. 899.) "Not every agency relationship, however, will bind a nonsignatory to an arbitration agreement." (*Cohen, supra*, 31 Cal.App.5th at p. 859.)

"[T]he proper inquiry is not only whether there is any sort of preexisting agency relationship with one of the signatories to the arbitration agreement—whether employer-employee, or another form of agency—but also whether that preexisting relationship is of such a nature that it supports a finding of 'implied authority for [one of the signatories] to bind [the nonsignatory] by their arbitration agreement.' [Citation.] It is critical to ask who is seeking to bind whom, and on what basis; the question of whether a principal's acts bind an agent is fundamentally different from the question of whether an agent's acts bind a principal." (*Jensen, supra*, 18 Cal.App.5th at p. 303.) Indeed, "[e]very California case finding nonsignatories to be bound to arbitrate is based on facts that demonstrate, in one way or another, the signatory's implicit authority to act on behalf of the nonsignatory." (*Id.* at p. 304; see *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 243 ["All nonsignatory arbitration cases are grounded in the authority of the signatory to contract … on behalf of the nonsignatory—to bind the nonsignatory in some manner."].) "Courts also have stated that the agency relationship between the nonsignatory and the signatory must make it ' "equitable to compel the nonsignatory" ' to arbitrate." (*Cohen, supra*, 31 Cal.App.5th at p. 860.) "But equity, without more, is not enough." (*Ibid.*)

In light of these requirements, "[a]n agency relationship between an employer or company (the principal) and its individual employee or officer (the agent) does not normally bind the individual to an arbitration agreement entered into by the employer or company." (*Cohen, supra*, 31 Cal.App.5th at p. 860; see *Suh, supra*, 181 Cal.App.4th at p. 1513 ["Persons are not normally bound by an agreement entered into by a corporation in which they have an interest or are employees."]; accord *Benasra, supra*, 92 Cal.App.4th at pp. 990–992 [rejecting claim that nonsignatory president of corporate signatory must arbitrate because he was agent of corporation].) Usually, an individual agent of a company that is a signatory to an arbitration agreement will be bound to arbitrate only "where the [individual] personally benefitted from the underlying contract" containing the arbitration agreement. (*Cohen*, at p. 861 [citing *RN Solution, supra*, 165 Cal.App.4th at p. 1520, *Harris, supra*, 188 Cal.App.3d at p. 479]; see also *Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222, 228 [sole general partner bound to arbitrate under agreement he signed on behalf of his limited partnership because "[t]he general partner is an agent of the limited partnership … and is logically a beneficiary of any agreement entered into on behalf of the partnership"].)

Here, the directors do not dispute they were agents of Orthofix based on their positions on the company's board. However, nothing about the agency relationship between the directors (the agents) and Orthofix (the principal) supports a finding that Orthofix had implied authority to bind the directors to the arbitration agreements. As noted, the directors did not sign the arbitration agreements in a personal capacity, nor did they sign them in an official capacity as directors for the company. There is no evidence in the record demonstrating that the directors benefited from the control and severance agreements or the arbitration agreements. Further, the directors

16

are not seeking to enforce the arbitration agreements; rather, it is the plaintiffs who are trying to force the unwilling nonsignatory directors into arbitration. (See *Benasra, supra*, 92 Cal.App.4th at pp. 991 ["The fact that a nonsignatory to a contract may in some circumstances be viewed as a third-party beneficiary or an agent who is entitled to compel arbitration … is legally irrelevant where, as here, [the nonsignatory] is not the one who wants to be bound by the arbitration provision"], italics omitted.)

For all these reasons, we discern no error in the trial court's finding that the directors may not be compelled into arbitration based on an agency theory.

### 4. *The Plaintiffs Forfeited Their Interconnectedness Theory*

The plaintiffs rely on one final theory to support their claim that the trial court erred by denying their request to compel the nonsignatory directors into arbitration. They contend their claims against the directors are arbitrable because the claims are inherently bound up in, or interconnected with, their claims against Orthofix. However, the plaintiffs did not present this argument to the trial court for its consideration in the first instance. Therefore, the argument is forfeited.[6] (See *Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 322 ["If a party fails to raise an issue or theory in the trial court, we may deem consideration of that issue or theory forfeited on appeal."]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480,

---

[6] In an effort to evade forfeiture, the plaintiffs claim they presented their interconnectedness theory to the trial court in their petition and complaint, as well as their application to grant the relief requested in the petition and complaint. The record refutes this assertion. The portions of the record cited by the plaintiffs show that the plaintiffs presented an agency theory to the trial court and asked the court to relate and consolidate the arbitration proceedings. They do not show that the plaintiffs presented an interconnectedness theory in the proceedings below.

1488, fn. 3 ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal."].)

B. *The Trial Court Properly Sustained the Demurrer to the Petition and Complaint Without Leave to Amend*

We now consider whether the trial court erred by sustaining the demurrer to the plaintiffs' petition and complaint without leave to amend. The plaintiffs do not present any substantive arguments that the trial court erroneously sustained the demurrer. However, they claim the court abused its discretion by denying them leave to amend their petition and complaint.

1. *Legal Standards*

On appeal from a judgment after an order sustaining a demurrer without leave to amend, we "review the operative complaint 'de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law.' " (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292.) "[W]e accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346.) Thereafter, we "determine 'whether the trial court abused its discretion by sustaining the demurrer without leave to amend.' [Citations.] Abuse of discretion is established when ' "there is a reasonable possibility the plaintiff could cure the defect with an amendment." ' [Citation.] Under both standards, the plaintiff has the burden of demonstrating trial court error." (*Morris,* at pp. 292–293.)

2. *The Trial Court Properly Denied Leave to Amend*

The trial court sustained the demurrer to the plaintiffs' petition and complaint without leave to amend, including their causes of action seeking: (1) a court order compelling Orthofix and the directors into arbitration under

18

the arbitration agreements, and (2) a declaration concerning the parties' rights and obligations under the arbitration agreements.

On appeal, the plaintiffs do not present any substantive arguments that the trial court should have overruled the demurrer.[7] Therefore, we presume the court correctly sustained the demurrer to the petition and complaint, and we proceed to consider whether the court erred by denying the plaintiffs an opportunity to amend their pleading. (See *Careau & Co. v. Security Pacific Business Credit Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

As to that issue, the plaintiffs have waived their arguments that the court should have granted them leave to amend. As noted, a plaintiff bears

---

[7] The plaintiffs reference the demurrer ruling twice in their opening brief. They argue, "The trial court erred as a matter of law because the Petition and Complaint alleged facts requiring the Directors to arbitrate the Employees' claims against them." Elsewhere, they claim, "the trial court erred as a matter of law in sustaining the Directors' demurrer to the Petition and Complaint." These conclusory assertions are inadequate to challenge the demurrer ruling. (*Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997, 1000, fn. 3 ["Appellant bears the obligation of demonstrating the trial court erred. To do so, appellant must provide a sufficient record and legal argument, supported by citation to legal authorities. Appellant's conclusory statement about [the] demurrer fails that obligation."].)

In any event, we conclude the court properly sustained the demurrer. The petition and complaint alleges, "Each of the Plaintiffs is a party to a Dispute Resolution Agreement with Defendant Orthofix," and "Plaintiffs and Orthofix entered into Change in Control and Severance Agreements." However, it does not allege the directors were signatories to the agreements or any facts illustrating the directors may be compelled into arbitration under one of the exceptions to the general rule that arbitration agreements cannot be enforced against nonsignatories. In fact, the petition and complaint contain virtually no averments about the directors, alleging only that "Burzik was Chair of the Orthofix Board," "Burzik was appointed interim CEO" after the plaintiffs were terminated, "Burris was a member of the Orthofix Board and its Audit and Finance and Compliance and Ethics Committees," and the directors' "actions ... underlie the parties' dispute."

19

the burden of showing that the trial court abused its discretion by sustaining a demurrer without leave to amend. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) "Plaintiff must show in what manner he can amend his complaint *and how that amendment will change the legal effect of his pleading.*" (*Ibid.*, italics added.) Thus, leave to amend is properly denied where the plaintiff "fails to offer cogent legal analysis clearly explaining how its proposed amendments would change the legal effect of the operative complaint." (*Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 54; see, e.g., *Summerfield v. City of Inglewood* (2023) 96 Cal.App.5th 983, 1001 [amendment properly denied where "[a]ppellants in no way explain[ed] how [their] proposed amendments would change the legal effect of the allegations in their FAC"]; *Moore v. Centrelake Medical Group, Inc.* (2022) 83 Cal.App.5th 515, 538 ["The[] [appellants] do not specify any defect, much less explain how the proposed amendment would cure it. Nor do they attempt to explain how the proposed amendment might enable their negligence claim to overcome the economic loss rule. Accordingly, they have forfeited any such argument."]; *Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1264 [amendment properly denied where party did not show "how the proposed amendment would change the legal effect of the pleading"].)

In their opening brief, the plaintiffs claim they would allege the following facts if given the opportunity to amend their petition and complaint: (1) the directors conducted the company's investigation into the plaintiffs' alleged misconduct; (2) the board's compensation and talent development committee authored the arbitration agreements and the change in control and severance agreements, the board approved the agreements, and the board required the plaintiffs to enter the agreements as a condition of employment; (3) the directors were members of the board in and around

20

the time the plaintiffs executed the arbitration agreements and the change in control and severance agreements; (4) Burzik took a lead role on the board's behalf with respect to hiring the plaintiffs; and (5) the directors "directly benefitted" from the arbitration agreements and have taken advantage of them to delay and drive up the expense of the plaintiffs' litigation.[8]

However, the plaintiffs do not explain *how* these proposed amendments would cure the legal defects of their petition and complaint. They do not articulate in even the broadest of terms what legal effect the proffered allegations would have on their petition and complaint, nor do they provide any legal authorities or cogent analysis demonstrating how the additional allegations would permit the trial court to compel the nonsignatory directors into arbitration. Because the plaintiffs do not present any arguments concerning the legal effect of their proposed amendments, we conclude the trial court properly sustained the demurrer without leave to amend.[9]

---

[8] We grant the plaintiffs' motion requesting that we accept and consider an offer of proof concerning their ability to amend the petition and complaint.

[9] The plaintiffs try to remedy this shortcoming for the first time in their reply brief by identifying—in a perfunctory manner—one or more of the exceptions (e.g., third-party beneficiary, agency, interconnectedness) to which their proposed amendments would be relevant. However, " ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764; see, e.g., *Lauckhart v. El Macero Homeowners Assn.* (2023) 92 Cal.App.5th 889, 905 [plaintiffs forfeited argument regarding why they should be granted leave to amend by raising it for the first time in reply brief]; *Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1010 [disregarding arguments in support of amendment raised in reply brief for first time].) There is no good cause for the plaintiffs' failure to present their arguments in their opening brief. Thus, the arguments are forfeited.

21

IV

DISPOSITION

The judgment and the order denying Appellants' application for relief are affirmed.  Respondents are awarded their appellate costs.

McCONNELL, P. J.

WE CONCUR:


DO, J.


CASTILLO, J.